# EXHIBIT A



MANDATE

# 08-4861-cv

UNITED STATES COURT OF APPEALS
FILED
JAN 2 1 2009
SECOND CIRCUIT

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

NEW JERSEY CARPENTERS VACATION FUND,

*Plaintiff-Appellant,*

—against—

HARBORVIEW MORTGAGE LOAN TRUST 2006-4, HARBORVIEW MORTGAGE LOAN TRUST 2006-5, HARBORVIEW MORTGAGE LOAN TRUST 2006-9, THE ROYAL BANK OF SCOTLAND GROUP, PLC, GREENWICH CAPITAL HOLDINGS, INC., GREENWICH CAPITAL ACCEPTANCE, INC., GREENWICH CAPITAL MARKETS, INC., GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., ROBERT J. MCGINNIS, CAROL P. MATHIS, JOSEPH N. WALSH III, JOHN C. ANDERSON, JAMES C. ESPOSITO, FITCH RATINGS, MOODY'S INVESTORS SERVICE, INC. AND THE MCGRAW-HILL COMPANIES, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### STIPULATION TO DISMISS APPEAL WITH PREJUDICE
### PURSUANT TO FED. R. APP. P. 42(b)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 2 7 2009

SCHOENGOLD SPORN LAITMAN &
LOMETTI, P.C.
JOEL P. LAITMAN
CHRISTOPHER LOMETTI
FRANK R. SCHIRRIPA
DANIEL B. REHNS
19 FULTON STREET, SUITE 406
NEW YORK, NEW YORK 10038
(212) 964-0046

*Attorneys for Plaintiff-Appellant*

CAHILL GORDON & REINDEL LLP
FLOYD ABRAMS
80 PINE STREET
NEW YORK, NEW YORK 10005
(212) 701-3000

*Attorneys for Defendant-Appellee
The McGraw-Hill Companies, Inc.*

CERTIFIED:     JAN 2 2 2009

Exhibit A ,
P. 9

*New Jersey Carpenters Vacation Fund*

**SIMPSON THATCHER & BARTLETT LLP**
THOMAS C. RICE
JAMES G. GAMBLE
425 LEXINGTON AVENUE
NEW YORK, NEW YORK 10017
(212) 455-2000

*Attorneys for Defendant-Appellees*
*The Royal Bank of Scotland Group, plc,*
*Greenwich Capital Holdings, Inc., Greenwich*
*Capital Acceptance, Inc., Greenwich Capital*
*Markets, Inc., Greenwich Capital Financial*
*Products, Inc., Robert J. McGinnis, Carol P.*
*Mathis, Joseph N. Walsh III, John C. Anderson*
*and James C. Esposito*

**SATTERLEE STEPHENS BURKE &**
**BURKE LLP**
JAMES J. COSTER
JOSHUA M. RUBINS
230 PARK AVENUE, 11TH FLOOR
NEW YORK, NEW YORK 10169
(212) 818-9200

*Attorneys for Defendant-Appellee*
*Moody's Investors Service, Inc.*

**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
MARTIN FLUMENBAUM
ROBERTA A. KAPLAN
1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
(212) 373-3000

*Attorneys for Defendant-Appellee*
*Fitch Ratings*

2

Whereas, Plaintiff-Appellant New Jersey Carpenters Vacation Fund has determined to withdraw this appeal and Defendants-Appellees do not object, it is hereby stipulated and agreed to that pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, the parties hereby stipulate that this appeal shall be dismissed with prejudice, with each party to bear all its own court costs and litigation expenses, including attorney fees, whether incurred in the district court or on appeal. *See Fed. R. App. P. 42(b).*

**IT IS SO STIPULATED.**

DATED:     January _20_, 2009

SCHOENGOLD SPORN LAITMAN &
LOMETTI, P.C.

BY: _____
JOEL P. LAITMAN
CHRISTOPHER LOMETTI
FRANK R. SCHIRRIPA
DANIEL B. REHNS
19 FULTON STREET, SUITE 406
NEW YORK, NEW YORK 10038
(212) 964-0046

*Attorneys for Plaintiff-Appellant*
*New Jersey Carpenters Vacation Fund*

3

CAHILL GORDON & REINDEL LLP

BY: _____
FLOYD ABRAMS
80 PINE STREET
NEW YORK, NEW YORK 10005
(212) 701-3000

*Attorneys for Defendant-Appellee*
*The McGraw-Hill Companies, Inc.*


SIMPSON THATCHER & BARTLETT LLP

BY: _____
THOMAS C. RICE
JAMES G. GAMBLE
425 LEXINGTON AVENUE
NEW YORK, NEW YORK 10017
(212) 455-2000

*Attorneys for Defendant-Appellees*
*The Royal Bank of Scotland Group, plc,*
*Greenwich Capital Holdings, Inc.,*
*Greenwich Capital Acceptance, Inc.,*
*Greenwich Capital Markets, Inc.,*
*Greenwich Capital Financial Products, Inc.,*
*Robert J. McGinnis, Carol P. Mathis,*
*Joseph N. Walsh III, John C. Anderson and*
*James C. Esposito*

4

Exhibit _A_,
P. _12_

CAHILL GORDON & REINDEL LLP

BY: _____
FLOYD ABRAMS
80 PINE STREET
NEW YORK, NEW YORK 10005
(212) 701-3000

*Attorneys for Defendant-Appellee*
*The McGraw-Hill Companies, Inc.*

SIMPSON THATCHER & BARTLETT LLP

BY: _____
THOMAS C. RICE
JAMES G. GAMBLE
425 LEXINGTON AVENUE
NEW YORK, NEW YORK 10017
(212) 455-2000

*Attorneys for Defendant-Appellees*
*The Royal Bank of Scotland Group, plc,*
*Greenwich Capital Holdings, Inc.,*
*Greenwich Capital Acceptance, Inc.,*
*Greenwich Capital Markets, Inc.,*
*Greenwich Capital Financial Products, Inc.,*
*Robert J. McGinnis, Carol P. Mathis,*
*Joseph N. Walsh III, John C. Anderson and*
*James C. Esposito*

4

Exhibit A ,
P. 13

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

BY: *Martin Flumenbaum*
MARTIN FLUMENBAUM
ROBERTA A. KAPLAN
1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
(212) 373-3000

*Attorneys for Defendant-Appellee*
*Fitch Ratings*

SATTERLEE STEPHENS BURKE &
BURKE LLP

BY: _____
JAMES J. COSTER
JOSHUA M. RUBINS
230 PARK AVENUE, 11TH FLOOR
NEW YORK, NEW YORK 10169
(212) 818-9200

*Attorneys for Defendant-Appellee*
*Moody's Investors Service, Inc.*

5

Exhibit A ,
P. 14

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

BY: _____
MARTIN FLUMENBAUM
ROBERTA A. KAPLAN
1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
(212) 373-3000

*Attorneys for Defendant-Appellee*
*Fitch Ratings*

SATTERLEE STEPHENS BURKE &
BURKE LLP

BY: _____
JAMES J. COSTER
JOSHUA M. RUBINS
230 PARK AVENUE, 11TH FLOOR
NEW YORK, NEW YORK 10169
(212) 818-9200

*Attorneys for Defendant-Appellee*
*Moody's Investors Service, Inc.*

FOR THE COURT,
Catherine O'Hagan Wolfe
_____
By: Delilah Carmona
Deputy Clerk

5

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk
by _____
DEPUTY CLERK

Exhibit A ,
P. 15

## CERTIFICATE OF SERVICE

I, Daniel B. Rehns, hereby certify that on January 21, 2009, I personally filed the foregoing with the Clerk of the Court, at Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and sent duplicates to the addresses of all counsel of record for the within matter via first class mail.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 21, 2009.

DANIEL B. REHNS
SCHOENGOLD SPORN LAITMAN &
LOMETTI, P.C.
19 FULTON STREET, SUITE 406
NEW YORK, NEW YORK 10038
(212) 964-0046

Exhibit A
P. 16

# EXHIBIT B

1

```
 1              THE CLERK:   In the matter of calendar item number
 2    one, CV 07-5295-MRP:  George Pappas, et al. vs. Countrywide
 3    Financial Corporation.
 4              Counsel, please state your appearances for the
 5    record.
 6              MR. BERNSTEIN:  Your Honor, good morning.  Happy
 7    New Year.
 8              THE COURT:  Thank you.
 9              MR. BERNSTEIN:  Joel Bernstein, Labatan & Sucharow
10    for the New York funds.  With me at the table are my partners
11    Ira Schochet, Ms. Julie Wang [sic] and from the Kreindler &
12    Kreindler firm, Mark Labatan.
13              THE COURT:  All right.
14              MR. PASTUSZENSKI:  Good morning, Your Honor.
15    Brian Pastuszenski from Goodwin & Procter for Countrywide
16    Financial.  Also Happy New Year, Your Honor.
17              THE COURT:  Thank you.
18              MR. KITCHENS:  Dean Kitchens, Your Honor, from
19    Gibson, Dunn, and Crutcher for the underwriter defendants.
20              THE COURT:  All right.
21              MR. LEFLER:  Good morning, Your Honor.  Dan Lefler,
22    Pamela Graham from Irell & Manella for Angela Mozilo.
23              MR. SULLIVAN:  Good morning, Your Honor.
24    Bill Sullivan and Josh Hamilton from Paul Hastings on behalf
25    of Defendant McLauglin.
```

UNITED STATES DISTRICT COURT

Exhibit B,
P. 17

```
 1              MS. GRABOYS BLAIR:  Good morning, Your Honor.
 2    Penelope Graboys Blair and my partner Michael Tu of Orrick,
 3    Herrington representing David Sambol.
 4              THE COURT:  Sambol?
 5              THE COURT:  Sambol.
 6              MR. LOBDEL:  Good morning, Your Honor.
 7    Judson Lobdell on behalf of former outside directors
 8    Henry Cisneros, Jeffrey Cunningham, Robert Donato, Ben Enis,
 9    Edwin Heller, Gwendolyn King, Martin Melone, Robert Parry,
10    Oscar Robertson, Keith Russell, and Harley Snyder.
11              MS. CARMAN:  Good morning, Your Honor.  Eva Carman
12    from the firm of Ropes & Gray on behalf of Andrew Gassinger.
13              MR. GORDINIER:  Good morning, Your Honor.
14    Todd Gordinier.  With me is my partner Scott Vick from
15    Bingham McCutchen for KPMG.
16              MS. MILSTEAD:  Good morning, Your Honor.  Virginia
17    Milstead from Skaden, Arps, Slate, Meagher, & Flom on behalf
18    of Michael Dougherty and Kathleen Brown.
19              MR. ESBENSHADE:  Good morning, Your Honor.
20    Andrew Esbenshade of Caldwell, Leslie & Proctor on behalf of
21    Defendant Stanford Kurland.
22              THE COURT:  Now, KPMG does not want to be heard?
23              MR. GORDINIER:  Your Honor, that's correct.  I have
24    nothing to say, although I'm happy to respond.  I mean, if
25    there are issues that we need to address, I'm here and
```

UNITED STATES DISTRICT COURT

Exhibit B ,
P. 18

1    prepared to address them, but I have nothing on my agenda.

2              THE COURT:  I'm not critical of your not wanting

3    to.   I'm -- I congratulate you on that, but I just wanted to

4    be sure.

5              MR. GORDINIER:  I'll be happy to respond if you've

6    got questions, but Mr. Pastuszenski --

7              THE COURT:  Sure.  So Mr. Bernstein, do you want to

8    be heard?

9              MR. BERNSTEIN:  Well, Your Honor, thank you.

10             THE COURT:  You know, I'm not doing -- I'm not

11   saying anything preliminarily because you know what we're

12   here for.  And you just go ahead and say whatever you'd like.

13   I'm -- everybody should speak as freely as they want to.

14             MR. BERNSTEIN:  Thank you, Your Honor.  And I

15   thought that I understood the reason why we were here because

16   at page 111 of your December 1st order you had stated that

17   the purpose of the conference would be to discuss discovery

18   issues relative to the claims that remained in the case after

19   your order.

20             About a week or two after we received the order, I

21   called Mr. Pastuszenski to ask him some preliminary questions

22   before coming to this conference.  He indicated that he did

23   not read the order the same way and said he would get back to

24   me.  And then this past Monday, I -- I followed up with all

25   defense counsel by sending them an e-mail saying that it was

UNITED STATES DISTRICT COURT

Exhibit B

P. 15

4

1    our understanding that the PSLRA stay was no longer in

2    effect; and if they had a different understanding, would they

3    agree to vacate the PSLRA stay.

4          In fact, I received an e-mail response from

5    Mr. Pastuszenski saying that that was not his understanding

6    at all and that the defendants were taking the position that

7    the stay still is in effect and that this was not an

8    appropriate time to discuss going forward with discovery.  So

9    with that in mind, I can explain to Your Honor the reasons

10   why I believe that the stay is no longer in effect, but I

11   think -- everybody --

12         THE COURT:  Why don't you omit whether the stay is

13   still in effect depending on what your interpretation of that

14   sense.  And tell me what it is you're urging the Court to do.

15         MR. BERNSTEIN:  Your Honor, we are urging the Court

16   to do -- to direct that three things happen:  One, we would

17   like to have a meet-and-confer conference under Rule 26

18   scheduled with defense counsel, and we would like that to be

19   scheduled by February 2nd, which is a Monday, and that's the

20   first step.

21         Second step, we would like to have a Rule 26(f)

22   conference with the Court during the week of February 23rd.

23         And the third thing, Your Honor, is that we believe

24   that -- that with respect to certain items of documents,

25   specifically documents that the defendants have already

UNITED STATES DISTRICT COURT

Exhibit $\cancel{B}$ ,
P. 20

1   turned over to the Securities Exchange Commission and the

2   Department of Justice, that have already been formally

3   demanded in some of the other cases that have been ordered to

4   coordinate with our case, specifically the case in front of

5   Judge Walter and the case in -- which is the ERISA case and

6   the state court *Luther* case in front of Judge Elias and --

7           THE COURT:  Who has it?

8           MR. BERNSTEIN:  Judge Elias.  I believe it's

9   Emily Elias.  Counsel for -- you had indicated early on that

10  that you wanted us to coordinate with other plaintiffs

11  counsel --

12          THE COURT:  I did.

13          MR. BERNSTEIN:  -- and we have been speaking with

14  them.  We have had an agreement that we will come up with a

15  protocol to deal efficiently with all of the defense counsel

16  so that there don't have to be a multiplicity of productions;

17  don't have to be a multiplicity of depositions.  We will have

18  a joint depository for documents that we receive; but in the

19  case in front of Judge Elias, there has already been a

20  Rule 26(f) conference.  There has already been a discovery

21  plan.  There's already been a document demand for many

22  things, among them, first and foremost, the documents that

23  have been produced to the SEC and the Justice Department.  We

24  know that --

25          THE COURT:  Slow down just a minute.  I don't want

UNITED STATES DISTRICT COURT

Exhibit  B ,

P.  21

1   to lose this point you're making.  Do it again.

2           MR. BERNSTEIN:   Okay.   In the case -- going back a

3   year or so when we first met with Your Honor, you had

4   indicated that cases in this courthouse, whether they would

5   remain in front you or in front of other judges -- and now

6   there's one in front of Judge Walter.

7           THE COURT:   There won't be any cases -- Securities

8   cases or ERISA cases in front of anybody except Judge Walter

9   and this courtroom.

10           MR. BERNSTEIN:   And it's our understanding that it

11  has always been the intent that those cases, being the ERISA

12  case, this case, and the *Arjin* case be coordinated in terms

13  of discovery.

14           THE COURT:   That's right.

15           MR. BERNSTEIN:   In addition, we have learned from

16  counsel for the plaintiffs in the *Luther* case, which is in

17  Superior Court in front of -- in front of Judge Elias that

18  Judge Elias has ordered at the insistence of counsel for

19  Countrywide, Mr. Pastuszenski, that discovery in that case be

20  coordinated with this case as well, and we have had

21  conferences with counsel in the state court case and the

22  other federal cases; and we've all entered into an agreement

23  among ourselves that we will work efficiently with all of the

24  courts and all the cases in order to have a proper protocol

25  so the defendants are not overly burdened by multiplicities

1    of document productions and multiplicities of depositions.

2              In the ERISA case in front of Judge Walter there's

3    already been a trial date set however.  And that trial date

4    is, I believe, December of this year.

5              THE COURT:  That's right.

6              MR. BERNSTEIN:  There is a lot of discovery that

7    must be done in any one of our cases, and the counsel --

8    plaintiff's counsel in the case in front of Judge Walter has

9    said, We're happy to cooperate and coordinate, but we have to

10   meet a deadline that Judge Walter has set for us to be ready

11   for trial.  So as for that reason, as well as the reason that

12   it just makes sense on the claims that you have sustained in

13   our case already, Your Honor.  It makes sense that discovery

14   to some extent or other must begin immediately, and what we

15   are asking for in the very first instance because it's going

16   to provide, we believe, a guide for the parties by which they

17   can further frame their requests later on.  We believe that

18   the most efficient and productive thing that can happen --

19   electronic discovery has already been produced to the SEC and

20   the Justice Department.  We have a transcript of

21   Mr. Pastuszenski saying that to Mr. Judge Elias in the state

22   court case.  We believe that the documents that were turned

23   over are on CD's or DVD's.  And we think that it would be a

24   very simple matter for those documents to now within a week's

25   time be turned over to us, generally speaking of course $10

```
 1    or $15 to reproduce copies of CD's or DVD's.  So it's not a

 2    burden.  It's not an expense --

 3              THE COURT:  I know.

 4              MR. BERNSTEIN:  -- and -- and so we would like to

 5    be able to set up according to Rule 26 the required

 6    meet-and-confer, the required conferences; but we think that

 7    in order for the parties to be able to coordinate properly --

 8    and it's now my -- part of my job since I've been ordered to

 9    coordinate with the Judge Walter case to make sure that they

10    are on track for their December trial date, and this is the

11    way that we can start that process.

12              THE COURT:  You can rely on the fact that

13    Judge Walter said it's going to be tried in December, it will

14    will be.

15              MR. BERNSTEIN:  Well --

16              THE COURT:  And now the -- I always have regarded

17    those ERISA cases all put in one group together in front of

18    Judge Walter as being narrower in scope than the ones that we

19    have in here; do you?

20              MR. BERNSTEIN:  Your Honor, I would not have an

21    opinion as to that matter.  If it was, it would not be a

22    considered opinion.  Counsel for the plaintiffs in the ERISA

23    cases, Ms. Sarah Kimberly from Carroll Warback is here today

24    and can address Your Honor on that if you so desire, but

25    I'd -- I'd -- I'd be afraid to give you an answer quite .
```

UNITED STATES DISTRICT COURT

Exhibit _B_ ,

P. _24_

```
 1   honestly.
 2              THE COURT:  All right.  Go on.
 3              MR. BERNSTEIN:  I've basically said my peace, Your
 4   Honor.  That's where we are.  We're requesting 26
 5   meet-and-meet-confer conference, 26(f) conference with the
 6   Court; and we're requesting that you direct the defendants to
 7   immediately begin to turn over production of what's been
 8   turned over to the Securities and Exchange Commission and the
 9   Department of Justice.  Thank you.
10              THE COURT:  All right.
11              MR. PASTUSZENSKI:  May I address the Court,
12   Your Honor?
13              THE COURT:  Yes, please certainly.
14              Now, leave about the part about the reading of the
15   meaning of -- because you have to take this position and he
16   has to take his position about what that line is.
17              MR. PASTUSZENSKI:  I'm not going to address that.
18              THE COURT:  No, don't do that.
19              MR. PASTUSZENSKI:  For the record,
20   Brian Pastuszenski from Goodwin Proctor on behalf of
21   Countrywide Financial corporation, Your Honor.
22              And, obviously, we have a room full of lawyers
23   representing individual defendants.  I think that my remarks
24   apply to all of them, but to the extent that they have used
25   different or supplemental -- I'm sure they'll address Your
```

Exhibit _B_,
P. _25_

```
 1    Honor.

 2              THE COURT:  Right.  Right.

 3              MR. PASTUSZENSKI:  Your Honor, at the outset,

 4    Mr. Bernstein is correct that it is defendant's view that

 5    notwithstanding your Honor's recent opinion sustaining some

 6    claims, granting the motion to dismiss in regard to other

 7    claims, that the stay does still apply.  It has not been

 8    vacated.  It is still in effect; and it is certainly the view

 9    of the defendants that until Your Honor has completed her

10    work on the new complaint, which, as you know, just got

11    filed, which the defendants are reviewing and --

12              THE COURT:  Yes.

13              MR. PASTUSZENSKI:  At least as to a portion of

14    which defendants will seek to file motions to dismiss on,

15    because there are a number of new allegations and additional

16    material.  Until that process is completed, it is defendant's

17    view that the stay remains in effect, and if Your Honor --

18              THE COURT:  You mean under the PS --

19              MR. PASTUSZENSKI:  Under the PSLRA.  And I think

20    that's clear from both, the wording of the statute which

21    talks in terms of if any motion to dismiss has been filed and

22    is pending and all of the cases that we have seen, I think

23    unanimously, are of the view that even if a complaint has

24    been sustained in part, even if a defendant -- and we don't

25    have that here, but even if a defendant were to concede that
```

1    a portion of the complaint states a claim -- nonetheless if

2    the Court's work has not been completed with respect to the

3    complaint, and I think that's true here because a new

4    amendment has just been filed, and motions to dismiss will be

5    coming in, the stay remains in effect.

6          And to the extent that Your Honor wishes -- and

7    Mr. Bernstein and I've already both on the phone and in -- in

8    this e-mail exchange that he referred to we're prepared to --

9    defendants are prepared to address that in a brief if Your

10   Honor so wishes.

11         THE COURT:  You mean brief the question of whether

12   the stay is still in effect?

13         MR. PASTUSZENSKI:  That's correct, Your Honor.  I

14   mean, there's no -- Your Honor, let me say candidly --

15         THE COURT:  I don't want you to brief it.

16         MR. PASTUSZENSKI:  Okay.  There's clearly no

17   disagreement on the part of the defendants that regardless of

18   what Your Honor does, in the main with respect to the new

19   allegations with respect to the motions that will be coming

20   in, discovery will be going forward as to a significant

21   portion of the case; but that is a different question from

22   whether it should be going forward today and whether the stay

23   remains in effect as defendant's believe it is.  I think

24   those are two very different questions.

25         Just a couple of other points Your Honor, by way of

1    clarification --

2            THE COURT:  Well, I did not lift the stay, because

3    words do not fail us.  And if -- if I had wanted to lift the

4    stay, I would have said the stay is lifted.  I didn't say

5    that.

6            MR. PASTUSZENSKI:  That's right, Your Honor.  I

7    understand that.  Thank you.

8            Just a couple of factual clarifications...

9    Judge Elias does have the *Luther* case which is, as you may

10   recall, that had a brief life in this courthouse.

11           THE COURT:  Do I recall *Luther*?  Yes.

12           MR. PASTUSZENSKI:  Yes, I'm sure you do.

13           THE COURT:  I want to tell you that I hope -- I

14   hope you're following this issue.

15           MR. PASTUSZENSKI:  Oh, yes, Your Honor.  I

16   assume --

17           THE COURT:  Because now we have got a dispute

18   between the circuits.

19           MR. PASTUSZENSKI:  You're absolutely right.

20           The 7th Circuit, Your Honor, just came down --

21   Judge Easterbrook just came down with an opinion that

22   respectfully went off in a different direction.

23           THE COURT:  It is, but this is what we've tried to

24   do in *Luther*.  And we were not trying to reach an effect.  We

25   were trying to see what we thought about that particular

Exhibit  B  ,
P.  28

1    question.  Now it has been picked up.  We considered all the

2    arguments he makes before we wrote *Luther*.  Now you've got a

3    conflict between the circuits.  And it's a worthy conflict.

4    And it is deserving of a lot of attention.

5            Now, I don't venture to say anything about the

6    state court proceeding.  My own sentiment is probably of no

7    interest at all about what I think about Securities cases

8    being in the Federal Court.  I think that if -- if his

9    emotion was -- it doesn't seem -- it seems that he's taking a

10   different view of -- but he does say that they're in

11   conflict, which is just what we were hoping would be done

12   somewhere in a Circuit.

13           Now, that means that I have no way of knowing what

14   happens about Judge Elias.  So now, what would you say to

15   meeting and conferring?

16           MR. PASTUSZENSKI:  Your Honor, I have -- I have no

17   objection to being in a dialogue with Mr. Bernstein because

18   as I said, there's no question that we're going to have

19   discovery as to some portion of the case going forward.

20           THE COURT:  You are.  You are.

21           MR. PASTUSZENSKI:  So I think to map out what

22   discovery will look like, those sorts of discussions I think

23   can happen.  I have no objection; and I would imagine that

24   none of the defendants would have an objection to starting

25   that though.  Some of the -- some of the defendants are

Exhibit B ,
P. 29

1   perhaps in a different posture because of your Honor's

2   rulings, but certainly the individual defendants as a whole,

3   and Countrywide I think we don't have any objection to

4   sitting down with plaintiff's counsel -- with Mr. Bernstein

5   and beginning that dialogue.

6          THE COURT:  Now, you realize that the next

7   ruling -- let's assume that we have some more -- another

8   round of motions to dismiss.  The next ruling is not going to

9   be 100-some odd pages long.  I'm very much opposed to writing

10  orders like that.  I don't think that what -- that's what

11  District Courts should do.

12         On the other hand, you almost have to do that in

13  this case.  You almost have to rigorously look at the

14  complaint.  It's -- the length is -- is a terrible obstacle,

15  the length is -- the complaint; but we did it, but we're not

16  going to do it again.  So then I'm assuming that the next

17  round is going to be shorter.

18         MR. PASTUSZENSKI:  I think your assumption is

19  correct, Your Honor.  What -- what I -- certainly what we are

20  doing on behalf of Countrywide and I'm sure counsel for the

21  individual defendants are doing is trying to assess of the

22  changes that have been made are those changes ones that merit

23  addressing to Your Honor, and only those --

24         THE COURT:  That's what --

25         MR. PASTUSZENSKI:  -- only those will be brought.

UNITED STATES DISTRICT COURT

Exhibit B
P. 70

1          THE COURT:  -- that's what you should be doing,

2    yeah.

3          MR. PASTUSZENSKI:  And I think as a result of that,

4    you will get fewer issues, and -- and as a result --

5          THE COURT:  You can -- you can depend on the fact

6    that the next concentration is on brevity.  People do this

7    differently, as you know.  Judges say that the best thing to

8    do is to rule in one line or more -- two lines maybe.  That

9    wouldn't suit this litigation at all; but once you've done

10   it, you're not going to do it again.

11         MR. PASTUSZENSKI:  I think everybody understands

12   that, Your Honor.

13         THE COURT:  All right.

14         MR. PASTUSZENSKI:  The only other points I would

15   make, Your Honor, are factual in nature.  Your Honor asked a

16   question about whether the ERISA case is narrower in scope.

17   And I think Your Honor is correct.  The class period runs

18   from the beginning of 2006 up through January --

19         THE COURT:  That's -- that's what I was talking

20   about.

21         MR. PASTUSZENSKI:  Right.  That is certainly true.

22   And then of course, because it is not -- because it is not

23   strictly a case about disclosure to the world --

24         THE COURT:  No.

25         MR. PASTUSZENSKI:  -- it's a case about the

UNITED STATES DISTRICT COURT

Exhibit _B_,
P. _31_

| | |
|---|---|
| 1 | fiduciary duties of the plan, committee members -- |
| 2 | THE COURT:  That's what I -- |
| 3 | MR. PASTUSZENSKI:  So I think Your Honor is |
| 4 | accurate in that regard.  Though there is within that two |
| 5 | year period the issues -- the ERISA complaint addresses does |
| 6 | overlap to a very very high degree the issues in this |
| 7 | courtroom -- |
| 8 | THE COURT:  I think so too. |
| 9 | MR. PASTUSZENSKI:  So the witnesses are -- many of |
| 10 | the witnesses will be the same same documents and so on.  The |
| 11 | other point I wanted to make Your Honor, is there was some |
| 12 | reference to Judge Elias and discovery proceedings in front |
| 13 | of her.  It is accurate that she did instruct plaintiff's |
| 14 | counsel to reach out to counsel in the federal securities |
| 15 | cases and ensure to the extent possible that any discovery |
| 16 | that went forward was coordinated because judge he will he |
| 17 | will like yourself is very sensitive to the overlap of issues |
| 18 | and to make sure that the discovery is efficient and not |
| 19 | duplicative, she did however deny plaintiff's motion to |
| 20 | compel with respect to the SEC materials as overbroad.  That |
| 21 | is just -- |
| 22 | THE COURT:  Well, I don't know.  That's really up |
| 23 | to her. |
| 24 | MR. PASTUSZENSKI:  Yes Your Honor but -- |
| 25 | THE COURT:  And I'm sure there are some materials |

UNITED STATES DISTRICT COURT

Exhibit B ,
P. 32

1   that the defendants might not want to give to the plaintiffs.

2   I'm sure that's true.

3         MR. PASTUSZENSKI:  Well, Your Honor I think it's

4   just a matter of relevance and scope.  Each case has its own

5   separate allegations and issues that are relevant to those

6   cases.

7         THE COURT:  That's right.

8         MR. PASTUSZENSKI:  But I just want to point that

9   out factually Your Honor.  Your Honor, unless you have any

10  further questions, I have nothing to say at this point.

11        THE COURT:  Let me see now.  Is there anyone else

12  who /UPBLT /WAs to be heard co.

13        MR. GORDINIER:  Your Honor, Todd Gordinier for

14  KPMG.  You correctly anticipated that things that were said

15  would leave me to address the Court.  And there are two

16  things I want to -- and Mr. Pastuszenski referenced them.  We

17  are -- my client KPMG is in a different position in two

18  respects that are of importance to the Court in the issue

19  this morning.  The first is we are not a party to the *Luther*

20  case.  We are not in front of Judge Elias in my manner.  We

21  are not a party to any of the ERISA cases.  So we are not in

22  front of Judge Walter, and we are not a party to the *Arjin*

23  case.  So we are in -- in a material why I different

24  procedural circumstance which I think has implications for

25  the level --

UNITED STATES DISTRICT COURT
Exhibit  B  ,
P. 33

```
 1              THE COURT:  What?  What co.
 2              [!EZ SPEAKER 02]:  Which leaves me to my second
 3    point.  The Court I'm sure doesn't want pre arguments on the
 4    motion to dismiss but Your Honor as we stand here today,
 5    there are no claims that in this new complaint that the Court
 6    has found were sufficient with respect to my client.  There
 7    are only three claims in the new complaint.  Both of the
 8    section 11 claims implicate only the 04 and 05 years which
 9    the Court found in its prior opinion did not rise to the
10    level that is required under the Securities laws.  And of
11    course, the Court dismissed entirely the (10)(b) claim.  So
12    as we stand today, it's far from clear that this case will
13    proceed in any manner with respect to my client and the other
14    cases were not even parties to.
15              Obviously the plaintiffs are going to disagree
16    about what they've -- but that's our position for now.  So I
17    really think, Your Honor it is really premature with respect
18    to KPMG to require us to -- to go beyond what the PSLRA
19    has -- has I'm sorry what --
20              THE COURT:  Well I don't feel that way about the
21    meet and confer.  How do you feel about that?  Co.
22              MR. GORDINIER:  We are happy to talk we are always
23    happy to meet and confer.  However we do think, Your Honor,
24    that it is not appropriate for KPMG to address specifically
25    what plaintiff's have asked for.  We do not believe it is
```

UNITED STATES DISTRICT COURT

Exhibit B ,
P. 34

```
 1    appropriate for us to have to engage in a -- in a formal

 2    Rule 26(f) process which as the Court knows is onerous in

 3    this case and similarly we do not believe it is necessary for

 4    us to produce any discovery since that is precisely what the

 5    PLSRA is intend today deal with that was the guy that said he

 6    didn't want to probably say anything Mr. Kitchen did you want

 7    to say.

 8              [!EZ SPEAKER 03]:  No I would submit.

 9              THE COURT:  All right anybody else?

10              MR. BERNSTEIN:  Your Honor, may I?

11              THE COURT:  Yes.  We are talking it out.

12              MR. BERNSTEIN:  A couple of points, Your Honor.

13    And the first instance just to correct it, there are claims

14    against KPMG that are in the case today that were not

15    dismissed.

16              THE COURT:  I know that.

17              MR. BERNSTEIN:  Okay.  And so that's the first part

18    of it.  Second part of it is that whether the stay is vacated

19    and I understand that it is not that you would have said so.

20              THE COURT:  Well, I can write those words you know.

21              MR. BERNSTEIN:  No.  I understand that Your Honor.

22    There are several cases that address the purpose of a p

23    already rsa stay and address the fact that once a complaint

24    is sustained in part or in large part, that discovery can and

25    should go forward with respect to claims and defendants that
```

```
 1   have not been dismissed even as amendments and additions or
 2   changes in a complaint are being further tested because the
 3   purpose of the stay congress is intent as we all know was to
 4   prevent frivolous lawsuits and you've already decided that
 5   this is not a frivolous lawsuit.  There is substance behind
 6   it and -- and made that determination.  And -- and to prevent
 7   the parties from going through -- or prevent defendants from
 8   being forced to settle cases by the expense of discovery
 9   before it's determined that there is a case that may be
10   worthy one day of settlement.  So those -- those purposes
11   that Congress had in setting up the stay in the first place,
12   have been met here.  There are cases such as the Lerna Hausby
13   case where the Court decided that -- that the stay could be
14   vacated at least as far as defendants that remained in a case
15   while a complaint was being amended and restested and the
16   Court said it can fashion its own orders to make sure that
17   there is no injustice or no prejudice to any defendant while
18   parts of a new complaint are still being tested.  The
19   Ninth Circuit said very similar things in the SG Cowan case.
20   So -- so when I hear the defendants say that they're happy to
21   talk, that's great.  Lawyers we all know -- we're all very
22   easy to talk, but we need to --
23            THE COURT:  Well, I'm not talking about chatting
24   about this.  I'm talking about everybody coming and everybody
25   planning.
```

```
 1              MR. BERNSTEIN:  That's fine.  And that would be
 2    what we request.  Now, the one thing that -- that -- that I
 3    must once again repeat though is that there is at least one
 4    plaintiff group that we have been directed to coordinate with
 5    and that is the ERISA group in front of Judge Walter that has
 6    a trial date and I -- I -- I -- I held a meeting of
 7    plaintiff's counsel the other day because I thought that you
 8    that was my obligation under what you had said to us a long
 9    time ago and they wanted me -- they asked me specifically to
10    bring to the table the fact that they will be prejudiced.
11    They will not be able to bring their case to trial on time in
12    front of Judge Walter unless this proceeding -- if the
13    discovery can actually get started.  And -- and and --
14              THE COURT:  That as I why we're here.
15              MR. BERNSTEIN:  Okay.  And -- and and so again,
16    they have requested a full blown document request and I said
17    give me one thing that I can say to judge fell /STKA* /STKER
18    today that would be relatively easy for the defendants to
19    comply with because they've already conducted their privilege
20    reviews.  They've already Bate stamped their documents.
21    They've already done those things that they have to do and
22    the answer was the production to the SEC and the department
23    of justice and there may be -- we understand that there may
24    be periods of time that -- that overlap and other /PEURDZ of
25    time the cases that do not overlap but it's been
```

Exhibit B ,
P. 31

1    Mr. Pastuszenski's who has been insist /STEPBLT in front of

2    other judges as well that everybody coordinate together and

3    as to prevent the /PWURD didn't there will be appropriate

4    protection orders and appropriate protection so that no one

5    is prejudiced and no one gets the wrong thing but a lot of

6    the information that predates their /KPHRAS period may be

7    historical information that is still relevant to them and I

8    don't want to argue their discovery motion because I'm not

9    /TPAL I am yes, sir with their case but a lot of these things

10   stand to reason if we're going to coordinate and order that

11   the defendant should not be overlily burdened then there may

12   be some /EUPBG thises that are not 100 percent that are they

13   never get produced nevertheless and the parties will have to

14   act responsibly to make sure that those items are not miss

15   handled and we're okay with doing that, Your Honor.

16           THE COURT:  Well, now, is there anybody else?  Is

17   that all.

18           MR. BERNSTEIN:  Yes, ma'am.

19           THE COURT:  Anybody else.

20           MR. PASTUSZENSKI:  May I respond just briefly.

21           THE COURT:  Yes by all means.

22           MR. PASTUSZENSKI:  Very very briefly Your Honor.

23           THE COURT:  We are talking it out.

24           MR. PASTUSZENSKI:  Thank you Your Honor /PWRAOEU

25   /KWRAPB /KAZ /KAZ for Countrywide.  Your Honor, with respect

UNITED STATES DISTRICT COURT

Exhibit B,
P. 38

1    to theer /REUS is a case, it is correct that there is a

2    December 09 trial date we're all focused on that.

3            THE COURT:  And I can assure you again if he says

4    December nine, it's going to be December nine.

5            MR. PASTUSZENSKI:  /#R50EUBGD and we are firmly

6    focused on that fact Your Honor both given what Judge Walters

7    said to us and given his track record.  There have been as

8    you might well suspect many many discussions wither /REUS is

9    a counsel about their discovery they are getting discovery

10   because the case obviously motions to dismiss were dealt with

11   a long time ago.  So --

12           THE COURT:  And not a 114 pages.

13           MR. PASTUSZENSKI:  No quite a small -- smaller

14   number, Your Honor.  So the point is I hear what

15   Mr. Bernstein is saying.  The coordination is important but

16   it is not as if the -- the ERISA plants are starting from

17   ground 0 there have been many many discussions about the

18   requests much of it has been worked out there are some areas

19   /*F disagreement but it is isn't as they've been waiting for

20   the wings of Your Honor that they're waiting for something so

21   they can begin discovery it is not plants it is plans mark

22   mark up there.

23           MR. BERNSTEIN:  Your Honor, I would just if you

24   don't mind like to quote from Mr. Pastuszenski's portion of a

25   revised joint planning report of Rule 26(f) conference it's

1   from -- it is September 22nd in the ERISA case in which it

2   was the defendant's position and I'm quoting on page seven

3   defendants submit that once motions have /TKEUS Countrywide

4   securities class action cases the parties can then confer on

5   appropriate /#K50RD /TPHAEUTed /STKED you'll for the

6   remaining fact discovery and we are there.  We have been

7   there for more /TPHAPB than a month now and -- and -- and

8   again, the coordination is something that they have been

9   pressing.  And I understand completely the reasons why and

10  their right to press /#230R it but they cannot press for that

11  and then delay to the prejudice of any of the plaintiff

12  groups about going.  Thank you.

13          THE COURT:  You must agree on a meet and confer.

14  And you must state and then you must actually meet and

15  confer.

16          Now it is all to too easy to come and have the

17  defendants say oh no I just don't know or it's an easy thing

18  in this case.

19          Now, the purpose and I'm repeating myself of

20  writing all those pages, was so that there would be easy --

21  an easy reference point on ruling on additional motions to

22  dismiss.  So you have to expect that when you agree about

23  these dates about filing papers, that I will probably shorten

24  them up and you have to expect that the next orders are going

25  to say in 2 or 3 lines what whatever I had in mind.  And then

UNITED STATES DISTRICT COURT
Exhibit B ,
P. 40

```
1    it's over.  So you must prelim /TPHAEURPLly meet and confer.

2    And you must preliminarily agree to a date and then you have

3    to agree to the date that you're going to meet and confer and

4    you have to let me know what it is.  Now, you do whatever you

5    want to about -- I have so many days to oppose this and you

6    have so many days to reply.  That part of it is all up to

7    you.

8              MR. BERNSTEIN:  May I interrupt.

9              THE COURT:  Yeah.

10             MR. BERNSTEIN:  I believe Your Honor has already

11   set a briefing schedule on a motion to dismiss.

12             THE COURT:  But if you think that I am going to our

13   think I am going to agree to extensions of that, you're

14   totally wrong.  Now we are at the point where we're going to

15   wrap it all up and then I want to have the discovery

16   conference.  But I want the meet and confer to take place

17   while you are doing whatever you're doing in terms of another

18   round of motions.  I am not lifting the discovery stay.  I am

19   ordering you to pick a date and go in and meet and confer.

20   And do it in good faith.  Now, I -- I want you to communicate

21   with me 234 a week and tell me that you have set it; where

22   it's going to be; and that you have an agenda for that

23   meeting.

24             Now, if I were representing the defendants I would

25   agree to all that and then just not do it.  But I'm not
```

1    talking about not doing it.  I'm talking about doing it.  I

2    don't blame anybody for representing their complaints the

3    best in the best possible obstruct tiff way or constructive

4    way that they know.  That's why you are -- that's why you

5    were selected.  But I have a different job to do.  Now, let's

6    take up whatever you have in mind from /HROR /RA and monell

7    /HRA.  You made a comment about the tone of the order.  So

8    let's put that out on the table and talk about it for one

9    minute blue blue that was our problem Your Honor.

10             THE COURT:  I know it was.  Will you come over here

11   and just you.

12             THE COURT:  Blue blue I don't know that we have a

13   lot to add in the filing what exactly did you have on your

14   mind he is from /ORPB /TPHEL and monell /HRA blue blue that

15   the court has already made determine I know /TPHAEULGSs about

16   things like the falsity case that has been established or the

17   loss causation.

18             THE COURT:  You mean I have said that to someone

19   blue blue that is what we're not referring to.

20             THE COURT:  Because I can assure you I did not say

21   that blue blue we don't read the Court's opinion as

22   prejudging the Court's we understand there be a day and time

23   where the defendants are /EPBLT /TAOEULT told come in and

24   that those defenses are still /SRAEUBL and to the defendants.

25             THE COURT:  Do you mean is it still a still a

UNITED STATES DISTRICT COURT

Exhibit B ,
P. 42

1    federal courtroom and are there still rules and procedure and

2    is this a motion to dismiss the pleading and I have to follow

3    whatever rules have been laid down by the supreme court about

4    how you analyze that kind of a motion?  I know all that blue

5    blue we have nothing else in mind.

6           THE COURT:  Well, then let me tell you:  You must

7    not make comments about orders because we are only talking

8    about pleadings.  There is a rule about how you look at

9    pleadings; how rigorous you have to be.  And I could have

10   said couldn't I, and you know that it could have happened...

11   that you get -- you get a one line ruling.  I could have done

12   that; but in order to be fair all the way around, I'm telling

13   an appellate court or anybody in the world how the analysis

14   of the pleadings proceeded.  And in -- with far more pain and

15   suffering than we had to incur.  Now, you must go to all of

16   your complaints and say it's painful to do this for them to

17   read it.  For me to do it; but that doesn't mean that anybody

18   has proved anything blue blue Your Honor we deem appreciate

19   the effort the Court put into we were not trying to be

20   critical.

21          THE COURT:  Well, if you find that I have said that

22   it's an open and shut case, I would appreciate your telling

23   me who I said that to blue blue that was not our point at all

24   we don't read the Court's order that way at all our concern

25   is others.

UNITED STATES DISTRICT COURT

Exhibit B ,
P. 43

1         THE COURT:  I can't control what other people do

2 blue blue we understand that and that was -- the point of our

3 short submission.

4         THE COURT:  So now we have had an honest exchange.

5 It doesn't bother me at all that you've said that because

6 what difference does that make?  It's just that I don't want

7 to give you the impression that even though a lot of people

8 have commented in the press and wherever they were

9 commenting, I'm trying to give you a fair shake at this blue

10 blue thank you we appreciate that.

11         THE COURT:  I have to do for the plaintiffs too

12 blue blue thank you we appreciate that.

13         THE COURT:  Now anything else.

14         MR. BERNSTEIN:  Your Honor, just a question... and

15 that would be: Is there an outside date by which you would

16 like us to hold the conference?

17         THE COURT:  You say it right now.

18         MR. BERNSTEIN:  I'd like to hold it within the next

19 three weeks.

20         THE COURT:  Well, that seems to be reasonable.

21         MR. PASTUSZENSKI:  I don't have any objection to

22 that Your Honor.

23         MR. BERNSTEIN:  Fine.

24         THE COURT:  All right.  Well, then do that.

25         Now, once again, don't go in the room and report to

1    me that you couldn't agree on anything.  I'm not asking you

2    to say okay we'll give you the discovery.  We're talking

3    about beginning a constructive process of actually talking

4    about what you plan to do because the next round of motions

5    is going to be very quick.  And then I would have to give you

6    another three months to talk about it and another three

7    months to file something and three months to another hearing,

8    and I'm not intending to do that.  We took -- we've taken all

9    the time we've got.  And wrong or right, I have two things to

10   say to you:  The problem about motions to dismiss in all the

11   circuits and in the Ninth Circuit particularly, is kind of up

12   in the air.  The cases are not fitting together quite the way

13   you'd like them to.  There is isn't a clear direction and

14   that is why we wrote 114 pages or whatever it was...

15          The second thing is I'm repeating to you that there

16   is a -- a very clear now disagreement between the circuits

17   about a very significant issue which is in Luther.  Luther

18   was written to raise that issue.  Luther raised that issue

19   and the Ninth Circuit it's been decided and now you have got

20   the first go round on Luther.  Now, if in your planning you

21   have to think about Judge Elias's case.  I didn't send that

22   back -- I didn't willingly send that back to state court and

23   I would be quite prepared and so would Judge Walter to

24   controlling it depending on how all this turns out but keep

25   an eye on the fact that you -- this might turn out

UNITED STATES DISTRICT COURT
Exhibit _B_,
P._45_

1     differently than we think about the state court proceeding.

2          We are quite prepared to do what is necessary to

3     move everything.  But you must remember that if you're going

4     to make a contribution of process, you have to occasionally

5     write something that tells why you're taking a particular

6     point of view.

7          So whatever happens, happens.

8          And you don't need to worry about your clients.  We

9     are not going to be prejudiced against them or for them.

10         Thank you.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

Exhibit  B ,

P.  46