Thomas J. Nolan (SBN 66992)
thomas.nolan@skadden.com
Eric S. Waxman (SBN 106649)
eric.waxman@skadden.com
Peter B. Morrison (SBN 230148)
peter.morrison@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Jay B. Kasner (admitted *pro hac vice*)
jay.kasner@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000 (fax)

*Attorneys for Specially Appearing Defendants*
Merrill Lynch & Co., Inc.; Merrill Lynch Mortgage
Investors, Inc.; Merrill Lynch, Pierce, Fenner & Smith
Incorporated; Merrill Lynch Mortgage Lending, Inc.;
Merrill Lynch Credit Corporation; Matthew Whalen;
Brian T. Sullivan; Michael M. McGovern; Donald C.
Han; and Paul Park

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNECTICUT CARPENTERS PENSION FUND and CONNECTICUT CARPENTERS ANNUITY FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERRILL LYNCH & CO., INC.; MERRILL LYNCH MORTGAGE INVESTORS, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; MERRILL LYNCH MORTGAGE LENDING, INC.; MERRILL LYNCH CREDIT CORPORATION; MATTHEW WHALEN; BRIAN T. SULLIVAN; MICHAEL M. McGOVERN; DONALD C. HAN; and PAUL PARK,<br><br>Defendants. | CASE NO.: 09-CV-01076 R (FFMx)<br><br>**1) NOTICE OF SPECIALLY APPEARING DEFENDANTS' MOTION AND MOTION (1) TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A) OR, ALTERNATIVELY, (2) TO STAY THE ACTION PENDING TRANSFER PURSUANT TO 28 U.S.C. § 1407; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**<br><br>**2) DECLARATIONS OF THOMAS J. NOLAN, KETAN PAREKH, DONALD C. HAN, MATTHEW WHALEN, BRIAN T. SULLIVAN, MICHAEL M. MCGOVERN, PAUL PARK; and**<br><br>**3) [PROPOSED] ORDER**<br><br>Date:   May 4, 2009<br>Time:   10:00 a.m.<br>Ctrm: 8 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Notice is hereby given that on May 4, 2009, or as soon thereafter as counsel may be heard by the Court, the Specially Appearing Defendants Merrill Lynch & Co., Inc. ("Merrill"), Merrill Lynch Mortgage Investors, Inc. ("MLMII"), Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS"), Merrill Lynch Mortgage Lending, Inc. ("MLML"), Merrill Lynch Credit Corporation ("MLCC"), Matthew Whalen, Brian T. Sullivan, Michael M. McGovern, Donald C. Han, and Paul Park (collectively, the "Defendants"), by their attorneys, will and hereby do move this Court for an Order (1) transferring this action to the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a); or, in the alternative (2) staying this action pending a decision by the Judicial Panel on Multidistrict Litigation (the "JPML") on Defendants' March 5, 2009 motion to transfer this case to the SDNY pursuant to 28 U.S.C. § 1407.[1]

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 23, 2009.

Defendants' Motion is based on this Notice of Motion and Motion; the Declarations of Thomas J. Nolan, Ketan Parekh, Donald C. Han, Matthew Whalen, Brian T. Sullivan, Michael M. McGovern, and Paul Park; all matters of which the Court may take judicial notice; and such other and further evidence as may be presented at or before the hearing on this Motion.

---

[1]   In filing this motion, Defendants expressly reserve their rights to challenge personal jurisdiction and raise all other defenses available under applicable procedural rules at the appropriate time.

1

2

3

4

DATED:  March 16, 2009

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

By: _____s/Thomas J. Nolan_____
                    Thomas J. Nolan
       *Attorneys for Specially Appearing Defendants*
Merrill Lynch & Co., Inc.; Merrill Lynch Mortgage
Investors, Inc.; Merrill Lynch, Pierce, Fenner &
Smith Incorporated; Merrill Lynch Mortgage
Lending, Inc.; Merrill Lynch Credit Corporation;
Matthew Whalen; Brian T. Sullivan; Michael M.
McGovern; Donald C. Han; and Paul Park

SPECIALLY APPEARING DEFENDANTS' MOTION FOR TRANSFER OR, IN THE ALTERNATIVE, FOR A STAY

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ................................................................1

II.    PRINCIPLES OF JUDICIAL EFFICIENCY AND ECONOMY
       COMPEL TRANSFER TO THE SOUTHERN DISTRICT OF NEW
       YORK.........................................................................................................4

       A.    This Action "Might Have Been Brought" In The Southern
             District Of New York.......................................................................5

       B.    The Convenience Of All Parties In Proceeding In The SDNY
             Weighs In Favor Of Transfer. .........................................................5

       C.    The Convenience Of The Witnesses In Proceeding In The SDNY
             Weighs In Favor Of Transfer. .........................................................7

       D.    Transferring This Action To The SDNY Would Promote The
             "Interest Of Justice." ......................................................................8

             1.    Plaintiffs' Choice Of Forum Is Entitled To Minimal
                   Deference.................................................................................9

             2.    The Pendency Of Related Cases In The SDNY Weighs In
                   Favor Of Transfer .................................................................12

             3.    The SDNY Has A Greater Local Interest In Adjudicating
                   This Controversy. ..................................................................14

       E.    The Court Should Decide Defendants' Transfer Motion Prior To
             The Connecticut Plaintiffs' Motion To Remand.............................15

III.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY THE
       PROCEEDINGS UNTIL THE JPML'S RULING ON DEFENDANTS'
       REQUEST TO TRANSFER. ....................................................................18

       A.    The Connecticut Plaintiffs Will Not Be Prejudiced By The
             Temporary Stay. .............................................................................19

       B.    Defendants Will Suffer Undue Prejudice Absent The Temporary
             Stay..................................................................................................20

       C.    The Requested Stay Will Conserve Substantial Judicial
             Resources.........................................................................................21

       D.    The Requested Stay Should Be Granted Prior To Any
             Consideration Of The Connecticut Plaintiffs' Motion To Remand....21

CONCLUSION ...................................................................................................24

iii

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                      **Page(s)**

*A. J. Industries, Inc. v. United States District Court*,
    503 F.2d 384 (9th Cir. 1974)............................................................................13

*Aikins v. Microsoft Corp.*,
    Civil Action No.: 00-0242 Section: "D" (3),
    2000 U.S. Dist. LEXIS 4371 (E.D. La. Mar. 24, 2000)...............................20

*In re Air Crash Disaster at Paris, France, on March 3, 1974*,
    386 F. Supp. 1404 (J.P.M.L. 1975) ..............................................................22

*Baldwin v. National Safety Associates, Inc.*,
    No. C-93-0571 BAC,
    1994 U.S. Dist. LEXIS 4468, (N.D. Cal. Apr. 6, 1994).................4-5, 12, 14

*Clayton v. Warlick*,
    232 F.2d 699 (4th Cir. 1956).........................................................................22

*Colf v. Regeneration Technologies, Inc.*,
    No. 06-CV 6604L,
    2007 U.S. Dist. LEXIS 2095 (W.D.N.Y. Jan. 11, 2007) .............................22

*In re Connetics Securities Litigation*,
    No. 06 Civ. 11496,
    2007 U.S. Dist. LEXIS 38480 (S.D.N.Y. May 23, 2007) ......................8, 11

*Continental Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (1960).........................................................................................13

*Decter v. MOG Sales, LLC*,
    No. 2:06-cv-1738,
    2006 WL 3703368 (E.D. Cal. Dec. 14, 2006) ............................................14

*Dowler v. Medicine Shoppe*,
    Case No. 2:07 cv 848,
    2007 U.S. Dist. LEXIS 73950 (S.D. Ohio Oct. 3, 2007) ............................22

*Foti v. Warner-Lambert*,
    No. 05-3665,
    2005 U.S. Dist. LEXIS 17737 (E.D. La. Aug. 16, 2005)............................22

*General Tire & Rubber Co. v. Jefferson Chemical Co.*,
    50 F.R.D. 112 (S.D.N.Y. 1970)....................................................................18

*George v. National Collegiate Athletic Association*,
    No. CV 08-03401 GAF (AGRx),
    2008 WL 5422882 (C.D. Cal. Dec. 17, 2008) ..............................................7

SPECIALLY APPEARING DEFENDANTS' MOTION FOR TRANSFER OR, IN THE ALTERNATIVE, FOR A STAY

*Gerin v. Aegon USA, Inc.*,
No. C 06-5407,
2007 U.S. Dist. LEXIS 28049 (N.D. Cal. Apr. 3, 2007).............................10

*In re Global Cash Access Holdings, Inc. Securities Litigation*,
No. 08 CV 3516,
2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008)............................................11

*Gould v. National Life Insurance Co.*,
990 F. Supp. 1354 (M.D. Ala. 1998).........................................................15

*In re Hanger Orthopedic Group, Inc. Securities Litigation*,
418 F. Supp. 2d 164 (E.D.N.Y. 2006)..................................................11, 12

*Hertz Corp. v. Gator Corp.*,
250 F. Supp. 2d 421 (D.N.J. 2003).......................................................20, 21

*Huntsman Corp. v. International Risk Insurance Co.*,
Civ. A. No. 1:08-CV-029,
2008 WL 1836384 (E.D. Tex. Apr. 22, 2008)...........................................15

*IMO Industries, Inc. v. Granite State Insurance Co.*,
No. 92-CV-2640,
1992 U.S. Dist. LEXIS 19499 (N.D. Cal. Dec. 9, 1992) ..........................6, 7

*Irvine Pharmaceutical Services, Inc. v. Arnold*,
No. SA CV 08-0972 DOC (ANx),
2008 U.S. Dist. LEXIS 91372 (C.D. Cal. Oct. 28, 2008) ............................7

*Italian Colors Restaurant v. American Express Co.*,
No. C 03-3719 SI,
2003 U.S. Dist. LEXIS 85135 (N.D. Cal. Nov. 10, 2003) ........................7, 9

*Jolly v. Purdue Pharma L.P.*,
Case No. 05-CV-1452 H (POR),
2005 U.S. Dist. LEXIS 44599 (S.D. Cal. Sept. 27, 2005)..................9, 10, 12

*Katz v. Gerardi*,
552 F.3d 558 (7th Cir. 2009)...............................................................2, 16

*In re Koratron.*,
302 F. Supp. 239 (J.P.M.L. 1969) ............................................................18

*Koster v. (American) Lumbermens Mutual Casualty Co.*,
330 U.S. 518 (1947)..................................................................................9

*Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb*,
No. 06-CIV-1942 (HB)
2006 U.S. Dist. LEXIS 36018 (S.D.N.Y. June 5, 2006) ..............................8

*Langley Partners, L.P. v. Tripath Technology, Inc.*,
No. 05 Civ. 5255, 2005
U.S. Dist. LEXIS 23004 (S.D.N.Y. Oct. 6, 2005) .......................................6

v

*In re LimitNone, LLC,*
    551 F.3d 572 (7th Cir. 2008)................................................................15

*Luther v. Countrywide Home Loans Servicing LP,*
    533 F.3d 1031 (9th Cir. 2008)..........................................................2, 16

*Lyman v. Asbestos Defendants,*
    C 07-4240,
    2007 U.S. Dist. LEXIS 78766 (N.D. Cal. Oct. 9, 2007)...................4, 18, 19

*Morris v. Safeco Ins. Co.,*
    No. C 07-2890 PJH,
    2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ...............................14

*New Jersey Carpenters Vacation Fund v. Harborview Mortgage Loan Trust
    2006-4,*
    581 F. Supp. 2d 581 (S.D.N.Y. 2008) .......................2-3, 10, 16-17

*Pacific Coast Federation v. Gutierrez,*
    No. C-05-3232 JCS,
    2006 U.S. Dist. LEXIS 97853 (N.D. Cal. Jan. 24, 2006)......................12

*Painter's District Council No. 30 Health & Welfare Fund v. Amgen, Inc.,*
    No. CV 07-3880 PSG (AGRx),
    2007 U.S. Dist. 85135 (C.D. Cal. Nov. 13, 2007) ..........................7, 11, 18

*Purcell v. Merck & Co.,*
    Civil No. 05 cv 04420-L (BLM),
    2005 U.S. Dist. LEXIS 41239 (S.D. Cal. June 3, 2005) ..........................22

*In re Regents of University of California,*
    964 F.2d 1128 (C.A. Fed. 1992)........................................................18

*Republic of Venezuela v. Philip Morris Cos.,*
    Case No. 99-0589-CIV-UNGARD-BENAGES,
    1999 U.S. Dist. LEXIS 22742 (S.D. Fla. Apr. 28, 1999).....................18, 22

*Rosenfeld v. Hartford Fire Ins. Co.,*
    No. 88 CIV. 2153 (MJL),
    1988 WL 49065 (S.D.N.Y. May 12, 1988) .................................19

*Saleh v. Titan Corp.,*
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ........................................9

*Saminsky v. Occidental Petroleum Corp.,*
    373 F. Supp. 257 (S.D.N.Y. 1974) .................................................8

*Schouman v. Schouman,*
    No. Civ. A. No. 96-11588-REK,
    1996 WL 721195 (D. Mass. Dec. 10, 1996)..........................15

*Sinochem International Co. v. Malaysia International Shipping Corp.,*
    549 U.S. 422 (2007)................................................................16

vi

*Stewart v. AT & T Inc.*,
   No. C 06-7363 SI,
   2007 U.S. Dist. LEXIS 28760 (N.D. Cal. Apr. 3, 2007)..........................9, 10

*Stewart v. The May Department Store*,
   No. Civ. A. 02-2772,
   2002 WL 31844906 (E.D. La. Dec. 12, 2002)..............................................15

*In re Stillwater Mining Co. Securities Litigation*,
   No. 02-CIV-2806 (DC),
   2003 U.S. Dist. LEXIS 7983 (S.D.N.Y. May 9, 2003)..................................8

*Toochinda v. Division of Correctional Health Care Services*,
   No. 2:08-cv-00986-MCE-DAD,
   2008 U.S. Dist. LEXIS 84104 (E.D. Cal. Sept. 15, 2008) ...........................12

*Turner v. Bausch & Lomb Inc.*,
   Case No. 8:06-cv-1088-T-24MSS,
   2006 U.S. Dist. LEXIS 48546 (M.D. Fla. July 17, 2006) ...........................22

*United States ex rel. Adrian v. Regents of University of California*,
   No. C 99-3864 TEH,
   2002 U.S. Dist. LEXIS 3321 (N.D. Cal. Feb. 26, 2002),
   *aff'd*, 363 F.3d 398 (5th Cir. 2004) ............................................................5

*Unisys Corp. v. Access Co.*,
   No. C05-3378 TEH,
   2005 U.S. Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005) ...........................14

*University of Pittsburgh of Commonwealth System of Higher Education v.
   Varian Medical Systems, Inc.*,
   No. C-08-2973 MMC,
   2008 WL 4279704 (N.D. Cal. Sept. 16, 2008) .............................................5

*In re Vioxx Products Liability Cases*,
   Lead Case No. 05-cv-0943 DMS (LSP),
   2005 U.S. Dist. LEXIS 40743 (S.D. Cal. July 11, 2005)..... 18, 19, 20, 21, 22

*In re Yahoo! Inc.*,
   No. CV 07-3125 (FMOx),
   2008 U.S. Dist. LEXIS 20605 (C.D. Cal. Mar. 10, 2008).....................*passim*

*Young v. Wells Fargo & Co.*,
   No. C 08-3735 SI, 2008 U.S. Dist. LEXIS 103955 (N.D. Cal. Dec. 17,
   2008) ......................................................................................................6, 11

**STATUTES**

15 U.S.C. § 77v ..................................................................................................5

vii

1

# MISCELLANEOUS

2

2 McLaughlin on Class Actions, § 12:6
    (3d ed. 2009) ................................................................17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SPECIALLY APPEARING DEFENDANTS' MOTION FOR TRANSFER OR, IN THE ALTERNATIVE, FOR A STAY

## I.       PRELIMINARY STATEMENT

In hopes of gaining a strategic advantage, the **Connecticut** Carpenters Pension Fund and **Connecticut** Carpenters Annuity Fund (the "Connecticut Plaintiffs") initiated this purported securities class action in Los Angeles Superior Court, a court over two-thousand miles away from where:  (1) the parties reside; (2) the witnesses are located; (3) the alleged wrong occurred; and (4) twenty-two related actions are pending before the Hon. Jed S. Rakoff in the Southern District of New York (the "SDNY").  The Defendants seek, through this motion to ensure that this case is heard where it most logically belongs – in the SDNY.  Accordingly, the Defendants respectfully request a transfer pursuant to 28 U.S.C. § 1404(a) or, in the alternative, a stay of this action pending a decision by the Judicial Panel on Multidistrict Litigation (the "JPML") on Defendants' March 5, 2009 motion to transfer this action to the SDNY for coordinated and consolidated pretrial proceedings.

The Complaint in this action, filed on December 5, 2008, asserts claims under the Securities Act of 1933 on behalf of a purported class concerning 35 separate offerings of mortgage-backed securities over a three year period, with a combined principal amount allegedly exceeding $34.5 billion.  (Compl. ¶ 22.)  The work done to prepare the three registration statements, the prospectuses and the prospectus supplements for the trusts identified in the Complaint (the "Offering Documents") was performed principally in New York.  (Declaration of Ketan Parekh (the "Parekh Decl.") ¶ 12.)  The trusts identified in the Complaint are formed under the laws of the State of New York.  (*Id.* ¶ 13.)  They were created in New York at the same time the mortgages underlying the trusts were securitized.  (*Id.*)   Virtually all of the Defendants reside in New York, and the Plaintiffs (and their lead counsel) are only about 100 miles from New York.  (*Id.* ¶¶ 4-9; Compl. ¶ 17.)

Meanwhile, *all* of the twenty-two related actions (including a virtually identical action, "*MissPERS*") have been assigned to Judge Rakoff in the SDNY for

1  coordination or consolidation.  In sum, New York, not California, is the obvious

2  locus of this dispute.[2]

3      Defendants have offered the Court two alternatives for addressing the

4  Plaintiffs' pursuit of this litigation in an inconvenient and inefficient forum:  an

5  immediate transfer pursuant to 28 U.S.C. § 1404(a) or, in the alternative, a stay of

6  this action to provide the JPML sufficient time to rule on the Defendants' March 5,

7  2009 motion to transfer pursuant to § 1407.  While each alternative is viable, only

8  Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) would, if granted,

9  dispense completely with all further proceedings before this Court.

10      This case is clearly fit for transfer under § 1404(a).  Significantly, the Hon.

11  Mariana Pfaelzer issued an opinion just last week that is *on all fours* with this action.

12  In *Public Employees System of Mississippi v. Morgan Stanley*, No. CV 08-01469

13  MRP (C.D. Cal. Mar. 6, 2009) ("*Morgan Stanley*"), Judge Pfaelzer transferred to the

14  SDNY a putative nationwide class action brought by non-resident plaintiffs against

15  investment bank Morgan Stanley concerning 1933 Act claims related to mortgage-

16  backed securities.  (*See* Ex. 13.)  In words wholly applicable here, Judge Pfaelzer

17  stated that **"[t]he only plausible reason that Plaintiffs sued in California state**

18  **court is that courts in the Southern District of New York take a different view of**

19  **'33 Act removal than do courts in the Ninth Circuit."**  *Id.* at 3-4.[3]

20  _____

21  [2]      The complaint filed in *Public Employees' Retirement System of Mississippi v.*

22  *Merrill Lynch Co. Inc.* (S.D.N.Y. Feb. 17, 2009) ("*MissPERS*") is attached as
    Exhibit 2 to the Declaration of Thomas J. Nolan (the "Nolan Declaration").  All
    exhibits referenced herein are attached to the Nolan Declaration.

23  [3]      As discussed more fully in the Defendants' Notice of Removal, the

24  Connecticut Plaintiffs (like the plaintiffs in *Morgan Stanley*) apparently instituted
    this action in California state court in an attempt to take advantage of the floodgates

25  potentially opened by the Ninth Circuit's decision in *Luther v. Countrywide Home*
    *Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008), by which the Ninth Circuit,

26  unlike *any* other court that has considered the issue, remanded a nationwide
    securities class actions that fell directly within the ambit of the Class Action Fairness

27  Act of 2005 ("CAFA") on the basis that the *Luther* Plaintiffs asserted claims under
    the Securities Act of 1933.  *Compare Luther*, 533 F.3d at 1034 *with Katz v. Gerardi*,

28  552 F.3d 558, 562 (7th Cir. 2009) and *New Jersey Carpenters Vacation Fund v.*

*(cont'd)*

2

1    Confronted with plaintiffs' attempt to forum shop, Judge Pfaezler transferred

2 the case to the SDNY, concluding that defendants' motion to transfer should be

3 addressed *before* plaintiffs' motion to remand.  *Id*. at 2.  In doing so, Judge Pfaelzer,

4 who authored the District Court *Luther* opinion, stated that "the Seventh Circuit in

5 *Katz* recently addressed arguments that the *Luther* Court did not expressly consider.

6 The Seventh Circuit then rejected *Luther*'s holding without dissent," adding that the

7 "Defendants appear to have nonfrivolous arguments for a change in the law due to

8 post-*Luther* developments."  *Id*. at 3.  Judge Pfaelzer's opinion applies with full force

9 here and underscores why the Court should transfer this action to the SDNY.

10    Under 28 U.S.C. § 1404(a), courts consider whether party convenience,

11 witness convenience, and the interests of justice support transfer.  The convenience

12 analysis is particularly straightforward in this case.  All parties are on the East Coast,

13 and all (except one) are located in the New York metropolitan area.  In such

14 circumstances, transfers to the district in which the issuer is headquartered – in this

15 case, the SDNY – "as a practical matter . . . are *routine*."  *In re Yahoo! Inc.*, No. CV

16 07-3125 (FMOx), 2008 U.S. Dist. LEXIS 20605, at *26 (C.D. Cal. Mar. 10, 2008)

17 (citation omitted).  This is especially the case where, as here, the majority of

18 anticipated witnesses in the action are concentrated in the SDNY, including many

19 third-parties that are beyond this Court's subpoena power.  (Nolan Decl. ¶ 16; Parekh

20 Decl. ¶¶ 14-17, 19-20, 23.)  As a result, proceeding in this forum would not only

21 inconvenience the witnesses personally, it would cripple the parties' ability to fully

22 put on their case at trial.  Section 1404(a) compels transfer under such circumstances.

23    "Interests of justice" also favor transfer under 28 U.S.C. § 1404(a).  The

24 Connecticut Plaintiffs' choice of California as their forum is entitled to virtually no

25 deference.  Courts are particularly loathe to open their doors to non-resident

26

27 *(cont'd from previous page)*
*HarborView Mortgage Loan Trust 2006-4*, 581 F. Supp. 2d 581, 582, 588 (S.D.N.Y.

28 2008).

3

1  plaintiffs who, as here, travel to a distant forum purportedly on behalf of unnamed

2  putative class members with the *sole* purpose of benefiting from what they perceive

3  to be more favorable law.  Transfer is also justified because failure to transfer would

4  potentially undermine the efforts of Judge Rakoff, who is presiding over twenty-two

5  related actions in the SDNY.

6      Indeed, the plaintiffs in the *MissPERS* action before Judge Rakoff assert

7  violations of the **same securities laws**, against many of the **same Defendants**,

8  relating to 28 of the **same securities offerings** as those at issue here.  (Nolan Decl.

9  ¶¶ 4- 5.)  Judge Rakoff is adjudicating the transferred actions in an expeditious and

10 efficient matter, with Lead Plaintiff selection to occur on April 6, 2009 and the filing

11 of amended complaints to occur by April 14.  (*Id*. ¶ 8.)  Nevertheless, the

12 Connecticut Plaintiffs have inexplicably decided to continue forward in this distant

13 forum on a parallel track, *not* seek consolidation, and *not* (at least as of the date of

14 this filing) move for Lead Plaintiff in the cases pending before Judge Rakoff, which

15 is their right.  (*Id*. ¶ 9.)

16     Absent a complete transfer, this action should be stayed pending a decision by

17 the JPML on the Defendants' March 5, 2009 transfer motion to the JMPL pursuant to

18 28 U.S.C. § 1407.  To facilitate § 1407 transfers, "'[c]ourts frequently grant stays

19 pending a decision by the MDL Panel.'"  *Lyman v. Asbestos Defendants*, C 07-4240,

20 2007 U.S. Dist. LEXIS 78766, at *5 (N.D. Cal. Oct. 10, 2007) (citation omitted).

21 Such a stay is justified here.

22 **II.    PRINCIPLES OF JUDICIAL EFFICIENCY AND ECONOMY**
23 **COMPEL TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK.**

24     At its core, the Court's consideration of a § 1404(a) transfer motion involves a

25 two-step inquiry: (1) a determination that the district to which the defendants seek to

26 have the action transferred is one in which the action "might have been brought";

27 and (2) a determination that the transfer is for the convenience of parties and

28 witnesses, and in the interest of justice. *Baldwin v. Nat'l Safety Assocs., Inc.*, No. C-

4

1  93-0571 BAC, 1994 U.S. Dist. LEXIS 4468, at *6 (N.D. Cal. Apr. 6, 1994).   Both

2  steps are satisfied here.

3    **A.    This Action "Might Have Been Brought" In The Southern District Of New York.**

4

5    An "action might have been brought" in another district, for purposes of

6  § 1404(a), if "the court (1) has personal jurisdiction over all defendants, (2) has

7  subject matter jurisdiction, and (3) is a proper venue for the action."  *Univ. of*

8  *Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, No. C-

9  08-2973 MMC, 2008 WL 4279704, at *1 (N.D. Cal. Sept. 16, 2008).  These

10  requirements are surely met here.  First, the 1933 Act would confer personal

11  jurisdiction over all of the Defendants if this action were to remain in federal court.

12  *See* 15 U.S.C. § 77v.  Second, federal courts have subject matter jurisdiction over

13  suits brought under the 1933 Act.  *Id.*  Finally, venue would be appropriate in the

14  SDNY because all of the defendants are "found" or "transact business" in the SDNY.

15  *Id.*

16    **B.    The Convenience Of All Parties In Proceeding In The SDNY Weighs In Favor Of Transfer.**

17

18    In considering a § 1404(a) motion, courts first determine whether transfer

19  would "convenience" the parties.  The place of the parties' residence generally

20  determines convenience as a matter of law.  *See U.S. ex rel. Adrian v. Regents of*

21  *Univ. of Cal.*, No. C 99-3864 TEH, 2002 WL 334915, at *4 (N.D.Cal. 2002) (finding,

22  based on the parties' residency, that "[a] transfer to Louisiana would be convenient

23  to all parties").

24    This is particularly so for lawsuits, like the one before this Court, concerning

25  alleged securities violations.  *See In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, at

26  *8 (holding that defendants' residency is a "weighty consideration" in evaluating a

27  transfer motion for a securities class action).  In fact, in the context of securities class

28  actions, transfers to the issuer's headquarters, "'as a practical matter . . . are

1  *routine.*'"  *Id.* at *26 (emphasis added, citation omitted); *see also Langley Partners,*

2  *L.P. v. Tripath Tech., Inc.*, No. 05 Civ. 5255, 2005 U.S. Dist. LEXIS 23004, at *5

3  (S.D.N.Y. Oct. 6, 2005) ("Courts faced with securities fraud actions have transferred

4  those actions to the district in which the issuer is located.").

5      Merrill Lynch's corporate headquarters and executive offices are located in

6  New York City.  (Parekh Decl. ¶ 8.) The Individual Defendants also reside in the

7  New York metropolitan area.[4]  Proceeding in the SDNY, therefore, would be more

8  convenient for Defendants.  Indeed, forcing Defendants to defend the Connecticut

9  Plaintiffs' claims in a California court over 2,000 miles away in a jurisdiction that

10  has little or no connection to Defendants would impose an unwarranted and wholly

11  avoidable inconvenience on Defendants.  (Parekh Decl. ¶ 25.)

12      Concern for the convenience to plaintiffs of proceeding in a particular forum,

13  on the other hand, is of reduced significance in the context of a securities law class

14  action, such as the one here.  *See In re Yahoo!*, 2008 U.S. Dist. LEXIS 20605, at *26

15  (concluding that the plaintiffs' convenience is not as crucial in deciding the

16  "convenience" factor because plaintiffs' allegations focus on defendants' conduct);

17  *see also Young v. Wells Fargo & Co.*, No. C 08-3735 SI, 2008 U.S. Dist. LEXIS

18  103955, at *12 (N.D. Cal. Dec. 17, 2008) (holding that, although certain class

19  members reside in the transferor forum, the relevant inquiry is "the convenience of

20  the named parties and principal witnesses likely to be deposed or testify at trial").

21      Here, of course, the SDNY would also be more convenient for the Connecticut

22  Plaintiffs because they are located in Hamden, Connecticut – a mere 100 miles from

23  the state of New York.  (Compl. ¶ 17.)  The fact that a transfer would also

24  convenience the Connecticut Plaintiffs further compels transfer here.  *See IMO*

25  *Indus., Inc. v. Granite State Ins. Co.*, No. 92-CV-2640, 1992 U.S. Dist. LEXIS

26  _____

27      [4] *See* Declarations of Matthew Whalen; Brian T. Sullivan; Michael M.

28  McGovern; Donald C. Han; and Paul Park, ¶ 4.

19499, at *8 (N.D. Cal. Dec. 9, 1992) ("Although arguing against a venue change, the transfer would seem to benefit IMO, a company headquartered near New Jersey.")

## C. The Convenience Of The Witnesses In Proceeding In The SDNY Weighs In Favor Of Transfer.

The second statutory factor considered by courts, the "convenience of witnesses," is "often the most important factor in ruling on a motion under § 1404(a)." *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, No. CV 07-3880 PSG (AGRx), 2007 U.S. Dist. LEXIS 85135, at *12 (C.D. Cal. Nov. 13, 2007).[5] Mindful that "litigation costs are reduced when venue is located near [where] most of the witnesses [are] expected to testify or give depositions," courts readily transfer cases to forums closer in proximity to the anticipated witnesses' residency. *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003).[6] Indeed, the fact that "the majority of witnesses expected to testify are located in or around New York" weighs mightily in favor of transfer, even where "all of the witnesses may come to California without dispute." *IMO Indus.*, 1992 U.S. Dist. LEXIS 19499, at *8.

The "convenience to the witnesses" of proceeding in a particular forum takes on heightened significance where the distant witnesses are "key" to the action. *Irvine Pharm.*, 2008 U.S. Dist. LEXIS 19499, at *7 (ordering transfer and observing that "[a]lthough the witnesses residing within California outnumber those residing elsewhere, the subject of the witnesses' testimony is central to the decision regarding

---

[5]   *Accord Irvine Pharm. Serv., Inc. v. Arnold*, No. SA CV 08-0972 DOC (ANx), 2008 U.S. Dist. LEXIS 91372, at *2 (C.D. Cal. Oct. 28, 2008).

[6]   *Accord In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, at *12 (transferring securities class action where "defendants have identified numerous other party and non-party witnesses for whom the litigation of this action in the Northern District would be more convenient"); *George v. Nat'l Collegiate Athletic Ass'n*, No. CV 08-03401 GAF (AGRx), 2008 WL 5422882, at *4 (C.D. Cal. Dec. 17, 2008) (ordering transfer of action to Indiana where the "NCAA has identified eight witnesses who possess 'significant experience and knowledge concerning the NCAA's ticket processes,' all of whom are located in Indiana").

7

whether or not to change venue").  In securities actions such as this one, it is well-recognized that "the key witnesses are frequently 'officers and employees of [the issuer] who participated in drafting or distributing allegedly false and misleading statements.'"  *In re Connetics Sec. Litig.*, No. 06 Civ. 11496, 2007 U.S. Dist. LEXIS 38480, at *10 (S.D.N.Y. May 23, 2007) (citation omitted).[7]

Defendants have identified over 45 possible witnesses located in or around New York who have knowledge regarding the securities offerings alleged in the Complaint.  (Parekh Decl. ¶¶ 14-17, 20.)  Certain of them participated in the drafting or distributing of the registration statements and prospectuses, which the Connecticut Plaintiffs alleged contain false or misleading statements.  (Parekh Decl. ¶¶ 14-16.) Of the identified witnesses, many of them are no longer employed by the Defendants and, absent transfer, would be outside this Court's subpoena power.  (*Id.* ¶¶ 14-15, 20 (identifying over 20 former employees).)  In addition, with its headquarters in New York, it is expected that there will be a number of additional current and former employees, officers, and directors in the SDNY that may need to testify in this matter. (*Id.* ¶¶ 19, 23.)  Accordingly, the "witness convenience" factor heavily weighs in favor of transfer.

**D.   Transferring This Action To The SDNY Would Promote The "Interest Of Justice."**

Along with the convenience of parties and witnesses, courts also balance the "interest of justice" in proceeding in another district.  Among the primary factors considered are (1) the deference afforded to plaintiffs' choice of forum, (2) the

---

[7]   *Accord Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb*, No. 06-CIV-1942 (HB), 2006 U.S. Dist. LEXIS 36018, at **17-18 (S.D.N.Y. June 5, 2006) (transferring case to district where "employees that participated in creating and issuing [the] statements" resided); *In re Stillwater Mining Co. Sec. Litig.*, No. 02-CIV-2806 (DC), 2003 U.S. Dist. LEXIS 7983, at *10 (S.D.N.Y. May 9, 2003) (the "key witnesses in this case are [ ] officers and employees of Stillwater who participated in drafting or distributing allegedly false and misleading statements"); *Saminsky v. Occidental Petroleum Corp.*, 373 F. Supp. 257, 260 (S.D.N.Y. 1974) (convenience of defendants' present and former employees who "participated in the allegedly fraudulent transactions" was important factor warranting transfer).

1  pendency of related actions in the transferee forum, and (3) the relative interests of

2  the two forums in the litigation. *Jolly v. Purdue Pharma L.P.*, Case No. 05-CV-1452

3  H (POR), 2005 U.S. Dist. LEXIS 44599, at *7 (S.D. Cal. Sept. 27, 2005). These

4  factors all countenance in favor of transfer of this action to the SDNY.

5      **1.  The Connecticut Plaintiffs' Choice Of Forum Is Entitled To**

6           **Minimal Deference.**

7          The deference generally provided to a plaintiff's choice of forum is simply not

8  applicable in this case. The degree of deference afforded a plaintiff is diminished if

9  any of the following conditions exist: (1) plaintiff purports to represent a putative

10 nationwide class; (2) plaintiff is a non-resident of the forum; (3) the operative facts

11 occurred outside the chosen forum; or (4) plaintiff has engaged in forum shopping.

12 *See Italian Colors Rest. v. Am. Express Co.*, 2003 WL 22682482, at **10-13. In this

13 case, *all* of these conditions exist.

14         In the context of a nationwide class action little deference is given to the

15 named plaintiff's choice of forum. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330

16 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . the

17 claim of any one plaintiff that [the] forum is appropriate . . . is considerably

18 weakened."); *see also Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal.

19 2005) ("[T]he Ninth Circuit, like other courts, has noted that the weight to be given

20 the plaintiff's choice of forum is discounted where the action is a class action."),

21 This is particularly true where, as here, the putative lead plaintiffs are *not* residents

22 of California.[8]

23

24

25 [8]    *See In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, at *15 ("Because

26 plaintiffs do not reside in this forum and because this case is a class action, the usual
   reasons for deferring to a plaintiff's choice of forum do not apply."); *Stewart v.*

27 *AT&T Inc.*, No. C 06-7363 SI, 2007 U.S. Dist. LEXIS 28760, at *7 (N.D. Cal. Apr. 3,
   2007) ("Where a plaintiff does not reside in the forum, the Court may afford his

28 choice considerably less weight.").

1    There is yet a further reason why the Connecticut Plaintiffs' choice of forum

2  does not merit deference:  the Connecticut Plaintiffs appear to have selected the

3  forum for strategic gain.  *Stewart*, 2007 U.S. Dist. LEXIS 28760, at *7 (ordering

4  transfer to Western District of Texas because the "Ninth Circuit has established that

5  courts should disregard a plaintiff's forum choice where the suit is a result of forum-

6  shopping" and plaintiff apparently chose the district because of favorable Ninth

7  Circuit law); *Gerin v. Aegon USA, Inc.*, No. C 06-5407, 2007 U.S. Dist. LEXIS

8  28049, at *20 (N.D. Cal. Apr. 3, 2007) ("'[I]f there is any indication that plaintiff's

9  choice of forum is the result of forum shopping, plaintiff's choice will be accorded

10  little deference.'") (citation omitted).

11    The Connecticut Plaintiffs' decision to institute a lawsuit in California appears

12  to be exactly the kind of forum shopping that is discouraged by federal courts of this

13  state.  Indeed, in Judge Pfaelzer's recent decision in *Morgan Stanley*, she refused to

14  defer to plaintiffs' chosen forum, in part, because the plaintiffs commenced their

15  action in California state court in a transparent attempt to benefit from the Ninth

16  Circuit's contested decision in *Luther*.  (Ex. 13 at 3-4) (transferring action where

17  "[t]he only plausible reason that Plaintiffs sued in California state court is that courts

18  in the Southern District of New York take a different view of '33 Act removal than

19  do courts in the Ninth Circuit.  *New Jersey Carpenters Vacation Fund v.*

20  *HarborView Mortgage Loan Trust*, 581 F. Supp. 2d 581 (S.D.N.Y. 2008) (rejecting

21  *Luther*).").

22    Finally, where, as here, the "operative facts" of the complaint do not relate to

23  the forum, plaintiffs' choice of forum is given virtually no deference.  *See Jolly v.*

24  *Purdue Pharma L.P.*, 2005 U.S. Dist. LEXIS 44599, at *7.  There can be little

25  dispute about where the operative facts arose because, in a securities action, the

26  "operative facts" – the alleged misstatements and omissions – are deemed to have

27  occurred in the district where they were transmitted or withheld.  *In re Yahoo! Inc.*,

28  2008 U.S. Dist. LEXIS, at *25 (holding that even though "allegations are based on

10

1   the failed efforts [of Yahoo!] all of which allegedly occurred in the Central

2   District . . . this case turns on the allegedly false public statements and the decisions

3   made by Yahoo!'s senior management, which indisputably occurred at Yahoo!'s

4   headquarters").[9]  Thus, in this instance, the operative facts all occurred in New York.

5        While the Connecticut Plaintiffs have sought to manufacture a connection to

6   California, none of the Complaint's allegations, even if true, justifies proceeding in

7   this district.[10]  <u>First</u>, the purported connections between this action and California are

8   *not* operative because, as discussed above, they do not relate to the gravaman of the

9   Complaint – the alleged misrepresentations in the Offering Documents.  Plaintiffs do

10  not dispute (nor can they) that the Offering Documents at issue were prepared in

11  New York, not California.  <u>Second</u>, even assuming "some" operative facts occurred

12  in California, the center of this dispute is in New York, where the "*significant*"

13  operative facts – the preparation and dissemination of the allegedly false Offering

14  Documents – occurred.  *See Painter's Dist. Council No. 30*, 2007 U.S. Dist. LEXIS

15  85135, at *12 (emphasis added) (granting transfer even though "some" operative

16  facts occurred in California); *see also Young*, 2008 U.S. Dist. LEXIS 103955, at

17  **10-11 ("[E]ven if WFC is involved to some degree in the formulation of these

18  policies and practices, the connection between plaintiffs' claims and this district is

19  much more tenuous than the connection to Iowa.").

20  [9]     *Accord In re Connetics*, 2007 U.S. Dist. LEXIS 38480, at *23 ("[T]he
21  operative facts are centered around the Northern District of California, wherein the
    defendants allegedly issued the misrepresentations that constitute the basis of this
22  litigation. Thus, the location of the operative facts weighs heavily in favor of a
    transfer of venue."); *In re Global Cash Access Holdings, Inc. Sec. Litig.*, No. 08 CV.
23  3516, 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008) ("Courts in this District
    have held that misrepresentations or omissions occur 'where the misrepresentations
24  are issued or the truth is withheld, not where the statements at issue are received.'")
    (citation omitted); *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d
25  164, 169 (E.D.N.Y. 2006) ("As in any securities-fraud action, plaintiffs' claims are
    based on defendants' alleged misrepresentations and omissions, all of which
26  originated in Maryland.").

27  [10]    Specifically, the Complaint notes that a percentage of pooled mortgage
    properties are located in California (Compl. ¶ 22) and that two of the mortgage
28  originators were located in California (Compl. ¶ 3).

11

1    <u>Finally</u>, there is no evidence that the alleged "operative facts"

2  disproportionately occurred in the Central District of California, as opposed to other

3  districts.  Indeed, the properties underlying the mortgage-backed securities are

4  located all over the country, not just in California.  (Parekh Decl. ¶ 24.) Accordingly,

5  transfer would still be appropriate even assuming that misrepresentations were made

6  in connection with the mortgaged properties located in California.  *See Baldwin v.*

7  *Nat'l Safety Assocs., Inc.*, 1994 U.S. Dist. LEXIS 4468, at *6 (ordering transfer

8  where "[p]laintiffs' own evidence demonstrates California is but one of many states

9  in which the activities occurred and the alleged victims are located"); *In re Hanger*,

10  418 F. Supp. 2d at 169 (granting transfer motion where "plaintiffs allege and intend

11  to prove that similar fraud occurred in other states; the case bears no more

12  connection to New York than to any of these other states").

13  ## 2.   The Pendency Of Related Cases In The SDNY Weighs In Favor Of Transfer

14

15    Transferring this action to the SDNY, where over twenty similar actions

16  arising out of the same set of operative facts are pending, would also promote the

17  interests of justice and judicial efficiency.  Courts have considered the pendency of

18  similar actions in the transferee forum as a "**highly persuasive**" factor in deciding if

19  the transfer would be in the "interest of justice." *Pac. Coast Fed. v. Gutierrez*, No. C-

20  05-3232 JCS, 2006 U.S. Dist. LEXIS 97853, at *11 (N.D. Cal. Jan. 24, 2006)

21  (emphasis added) ("[T]he pendency of related actions in the proposed transferee

22  forum is a highly persuasive factor" in determining if the transfer is in the interest of

23  justice.).[11]  Indeed, "[t]o permit a situation in which two [or more] cases involving

24  precisely the same issues are simultaneously pending in different District Courts

25  ———————————————

26  [11]    *Accord Jolly*, 2005 U.S. Dist. LEXIS 44599, at *7 ("The pendency of related actions in the transferee forum is a significant factor in considering the interest of
27  justice factor."); *Toochinda v. Div. of Corr. Health Care Servs.*, No. 2:08-cv-00986-MCE-DAD, 2008 U.S. Dist. LEXIS 84104, at **4-5 (E.D. Cal. Sept. 15, 2008)
28  (granting transfer because related case was pending in transferee forum).

1  leads to the wastefulness of time, energy and money that § 1404(a) was designed to

2  prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).  This factor

3  takes on even more significance where there is a possibility that, upon transfer, the

4  action may be consolidated with the pending litigation in the transferee court.  *See A.*

5  *J. Indus., Inc. v. United States Dist. Court for Cent. Dist.,* 503 F.2d 384, 389 (9th Cir.

6  1974) ("[T]he pendency of an action in another district is important [to a venue

7  transfer analysis] because of the positive effects it might have in possible

8  consolidation of discovery and convenience to witnesses and parties.").

9       As discussed more fully in the declaration of Thomas J. Nolan, twenty-two

10  related actions have been transferred to Judge Rakoff in the SDNY.  (Nolan Decl.

11  ¶¶ 4-10.) Two of the litigations – the *Iron Workers* and *MissPERS* actions – were

12  recently transferred to Judge Rakoff for consolidation and coordination.  (Nolan Decl.

13  ¶ 7, Exs. 4-5.)  As with this action, the *Iron Workers* and *MissPERS* actions both

14  involve many of the *same* Defendants, are based on the *same* alleged securities

15  violations, and relate to many of the *same* registrations statements and certificates at

16  issue here.  (*Id.* ¶¶ 4-6.)  Indeed, there is a near complete overlap between this action

17  and the *MissPERS* action, which involves 28 of the 35 securities offerings at issue

18  here.  (Nolan Decl. ¶ 5.)

19       Judge Rakoff, who is well-versed in the legal and factual issues presented by

20  these actions, set a tight schedule for the consolidated action by ordering:  (i) a date

21  for the selection of lead plaintiff, a position for which the Connecticut Plaintiffs are

22  entitled to apply (April 7); (ii) the filing of an amended complaint after the selection

23  of a lead plaintiff (April 14); and (iii) a hearing on dispositive motions in these

24  consolidated actions (June 18).  (Nolan Decl. ¶ 8.)  Nevertheless, the Connecticut

25  Plaintiffs insist on duplicating efforts in a court across the country.  (*Id.* ¶ 9.)  The

26  Defendants respectfully suggest that this Court not permit such duplication and order

27  the transfer of this action to the SDNY, where it will be assigned to Judge Rakoff

28  and consolidated with the *Iron Workers* and *MissPers* actions.

13

**3.     The SDNY Has A Greater Local Interest In Adjudicating This Controversy.**

In deciding if transfer would be in the "interests of justice," courts also consider the relative interests of the two forum states in the litigation.  *See Morris v. Safeco Ins. Co.*, No. C 07-2890 PJH, 2008 WL 5273719, at *6 (N.D. Cal. Dec. 19, 2008) ("[B]ecause the Fresno Defendants all reside in Fresno and their alleged wrongful conduct giving rise to this action occurred in Fresno, the Eastern District has a greater local interest in this case.").[12] Here, New York has a greater local interest in adjudicating this controversy than California because all the actions and decisions related to the Connecticut Plaintiffs' claims occurred in New York, not California, and many of the Defendants reside in the state of New York.  (*See supra* at 1; *see also Decter v. MOG Sales, LLC*, No. 2:06-cv-1738, 2006 WL 3703368, at *3 (E.D. Cal. Dec. 14, 2006) ("[G]iven that most of the documentary evidence, witnesses, and actions at issue in this case are in, or occurred in, Ohio, the Court finds that Ohio has a greater local interest in the controversy at issue than does California.").[13]

---

[12]     In evaluating which district has a greater local interest in adjudicating the claim or controversy, courts often look to factors such as:  (1) where the operative facts occurred, (2) where the claims in dispute arose, (3) and whether there exists any connection between the transferor forum and the underlying dispute. *See Unisys Corp. v. Access Co.*, No. C05-3378 TEH, 2005 U.S. Dist. LEXIS 31897, at *6 (N.D. Cal. Nov. 23, 2005) (transferor forum had no local interest in the controversy due to the lack of connection between the parties' presence in the transferor forum and the underlying dispute).

[13]     That some potential class members may be located in California does not, as a matter of law, establish the necessary connection between California and this case. *See Baldwin*, 1994 U.S. Dist. LEXIS 4468, at *5 ("If this case is not certified as a class action, the Northern District of California has no interest at all.  If it is not a class action, it is simply a dispute between an Ohio plaintiff and Tennessee defendants about evens which occurred outside this District.").

### E.   The Court Should Decide Defendants' Transfer Motion Prior To The Connecticut Plaintiffs' Motion To Remand.

Defendants' motion to transfer venue can be, and should be, decided *before* the Connecticut Plaintiffs' pending motion to remand.  (*See* Ex. 13 (*Pub. Employees Ret. Sys. of Miss. v. Morgan Stanley*, Case No. CV 08-01469 MRP (FMOx) at 3 (C.D. Cal. Mar. 6, 2009)) (declining to address plaintiffs' motion for remand and granting defendants' motion to transfer) *citing approvingly Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1362 (M.D. Ala. 1998) ("[T]here is no federal law or statute, or judicial decision, that requires [a] court to decide a motion to remand before it decides a motion to transfer."); *see also In re LimitNone, LLC*, 551 F.3d 572, 576-78 (7th Cir. 2008) ("LimitNone may move to remand the case to state court, should it so desire, after the case is transferred."); *Huntsman Corp. v. Int'l Risk Insurance Co.*, Civ. A. No. 1:08-CV-029, 2008 WL 1836384, at *3 (E.D. Tex. Apr. 22, 2008) ("'[F]ederal courts need not decide a motion to remand a removed case before ruling on a motion to transfer to another district.'") (citation omitted); *Stewart v. The May Dept. Store Co.*, No. Civ. A. 02-2772, 2002 WL 31844906, at *2 (E.D. La. Dec. 12, 2002) ("[T]he Court finds Saks' Motion to Transfer should be granted, and accordingly, it does not reach the issues raised in Plaintiffs' Motion to Remand."); *Schouman v. Schouman*, No. Civ. A. No. 96-11588-REK, 1996 WL 721195, at *5 (D. Mass. Dec. 10, 1996) (transferring the "entire case, including the pending motion to remand" pursuant to § 1404(a)).

In fact, only about a week ago, Judge Pfaelzer transferred a virtually identical action from the Central District to the SDNY, despite a dueling motion to remand. (*See* Ex. 13 (*Pub. Employees Ret. Sys. of Miss. v. Morgan Stanley*, Case No. CV 08-01469 MRP (FMOx) at 3 (C.D. Cal. March 6, 2009)).  In *Morgan Stanley*, just as in the instant case, (i) a plaintiff from outside of California (ii) brought a securities class action under the Securities Act of 1933 (iii) in California state court (iv) against an investment bank headquartered in New York (v) alleging false and misleading

15

1  statements in offering documents prepared in New York (vi) concerning mortgage-

2  backed securities involving trusts created under the laws of the State of New York.

3  (*See id*.)  In *Morgan Stanley*, just as here, defendants sought to transfer the action to

4  SDNY where the alleged wrongdoing occurred and parties and the witnesses were

5  located.  (*Id*.)  Plaintiffs in *Morgan Stanley*, as in this case, filed a motion to remand

6  to California state court.  (*Id*.)  For the same reasons Judge Pfaelzer transferred the

7  *Morgan Stanley* action to the SDNY, this Court too should transfer this action to the

8  SDNY.

9      Significantly, Judge Pfaelzer concluded that the motion to transfer *should* be

10  addressed *before* the motion to remand based upon the principles set forth by the

11  Supreme Court in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422

12  (2007) (holding that a court may address motions contesting the propriety of the

13  forum chosen prior to addressing jurisdictional issues).  (*Id*. at 3-4.)  Because "[a]

14  decision to transfer for inconvenient forum is not a decision on the merits and

15  therefore does not require a finding of jurisdiction," a court is within its power to

16  decide a motion to transfer venue before a motion to remand.  (*Id*.)

17      Judge Pfaelzer's opinion also demonstrates why this Court need not reach

18  Plaintiffs' motion to remand before transferring this action to the SDNY.  Plaintiffs'

19  motion to remand this action undoubtedly will rely on *Luther v. Countrywide Home*

20  *Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008).  In *Luther*, the Ninth Circuit

21  considered for the first time whether defendants could remove under the Class

22  Action Fairness Act of 2005 ("CAFA") securities class actions alleging violations of

23  the Securities Act of 1933 even though the Securities Act of 1933 contains an anti-

24  removal provision.  The Ninth Circuit found that the Securities Act of 1933's anti-

25  removal provision trumps the conflicting removal provision of CAFA.

26      The *Luther* decision, however, has been uniformly criticized and rejected by

27  every court to consider the issue since *Luther*, including the Seventh Circuit.  *See*

28  *Katz v. Gerardi*, 552 F.3d 558, 562 (7th Cir. 2009) (expressly rejecting *Luther*); *New*

16

1  *Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4*, 581

2  F. Supp. 2d 581, 588 (S.D.N.Y. 2008) (same); *see also* 2 *McLaughlin on Class*

3  *Actions* § 12:6 (3d ed. 2009) ("The conclusion in *Luther* is at odds with (i) the intent

4  of Congress in enacting CAFA to expand federal jurisdiction over securities class

5  actions of national import, and (ii) the [fact] that SLUSA and CAFA are part of a

6  coherent mechanism making express provision of federal jurisdiction for all

7  securities cases that have a national impact.").

8        Indeed, in *Morgan Stanley*, Judge Pfaelzer stated that the continuing validity

9  of *Luther* is questionable in light of the Seventh Circuit's recent rejection of *Luther*.

10  (*See* Ex. 13 at 1-2, 3.) (finding that there were "nonfrivolous arguments for a change

11  in the law due to post-*Luther* developments" and noting that, in rejecting *Luther*, "the

12  Seventh Circuit in *Katz* [ ] addressed arguments that the *Luther* Court did not

13  expressly consider").

14        Given the criticism of *Luther*, therefore, Judge Pfaelzer determined that she

15  "need not address these difficult questions" surrounding the circuit split but, instead,

16  should focus on the Defendants' "sound arguments for transfer." (*Id*. at 2, 3.) Judge

17  Pfaelzer did so particularly because, as she noted in words applicable here, "[t]he

18  only plausible reason that Plaintiffs sued in California state court is that courts in the

19  Southern District of New York take a different view of '33 Act removal than do

20  courts in the Ninth Circuit." (*Id*. at 3-4.) Because *Morgan Stanley* addresses

21  precisely the same issues before the Court here, the Court should adjudicate

22  Defendants' motion to transfer before the Connecticut Plaintiffs' motion to remand.

23  In fact, the need to proceed in this fashion is even more compelling here because,

24  unlike in *Morgan Stanley*, twenty-two actions related to this dispute have already

25  been consolidated and coordinated in the SDNY. (Nolan Decl. ¶¶ 4-13.) The Court

26  should therefore transfer this action to the SDNY.

27

28

### III.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY THE PROCEEDINGS UNTIL THE JPML'S RULING ON DEFENDANTS' REQUEST TO TRANSFER.

Absent a complete transfer under § 1404(a), an immediate stay is appropriate to provide the JPML sufficient time to rule on Defendants' pending motion to transfer pursuant to the JMPL's Transfer Order for coordinated and consolidated pretrial proceedings.  (*See* Ex. 7 (JPML's Transfer Order); Nolan Decl. ¶¶ 10-11.)[14] Courts liberally grant stays pending the resolution of a motion to transfer, recognizing that doing so serves the interests of judicial economy, preserves the resources of the parties, and prevents the possibility of inconsistent pre-trial rulings. *See, e.g., Lyman*, 2007 U.S. Dist. LEXIS 78766, at *5 ("Courts frequently grant stays pending a decision by the MDL Panel.") (citation omitted); *In re Vioxx Prods.*, 05cv0943, 2005 U.S. Dist. LEXIS 40743, at **4-7 (S.D. Cal. July 11, 2005) (granting stay pending MDL transfer ruling because plaintiffs would suffer no prejudice, judicial resources would be conserved, and defendants would be prejudiced by potential duplicative motion practice, discovery and inconsistent rulings without a stay); *Republic of Venezuela v. Philip Morris Cos.*, 99-0589-CIV, 1999 U.S. Dist. LEXIS 22742, at *6 (S.D. Fla. Apr. 28, 1999) (granting stay pending JPML's decision on motion for MDL transfer, despite plaintiff's pending motion to remand to state court).

---

[14]    Defendants' motions for transfer under § 1404(a) and § 1407 are complementary.  Indeed, it is well established that a "motion before the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 . . . is not inconsistent with nor does it supersede the plaintiffs motion [ ] under . . . § 1404(a) to transfer." *Gen. Tire & Rubber Co. v. Jefferson Chem. Co.*, 50 F.R.D. 112, 116 (S.D.N.Y. 1970); *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, No. CV 07-3880 PSG (AGRx), 2007 U.S. Dist. LEXIS 85135, at *12 (C.D. Cal. Nov. 13, 2007) ("That this case may eventually be consolidated for discovery purposes and transferred to a single venue does not prevent this Court from transferring Plaintiff's case."); *see also In re Regents of University of California*, 964 F.2d 1128, 1133 (C.A. Fed. 1992) ("The denial of a motion to transfer under § 1404(a) does not bar coordination of pretrial procedures under § 1407."); *In re Koratron*, 302 F. Supp. 239, 242 (J.P.M.L. 1969) ("Sections 1404(a), 1406(a), and 1407 are not mutually exclusive and, when appropriate, should be used in concert to effect the most expeditious disposition of multidistrict litigation.").

In deciding whether to grant stays pending resolution of a motion to transfer, courts balance three factors: "(1) potential prejudice to the [plaintiffs]; (2) hardship and inequity to the [defendants] if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *In re Vioxx*, 2005 U.S. Dist. LEXIS 40743, at **3-4. As discussed below, all of the relevant factors militate strongly in favor of a stay in this case.

## A.   The Connecticut Plaintiffs Will Not Be Prejudiced By The Temporary Stay.

Appreciating the benefits of coordinated and consolidated proceedings, courts carefully scrutinize claims of prejudice arising from a stay pending a decision by the JPML. *See, e.g.*, *Lyman*, 2007 U.S. Dist. LEXIS 78766, at **6-8 (staying proceedings in light of the efficiency gains from a multidistrict transfer, even where allegedly one of the plaintiff's "'health is rapidly deteriorating' due to his lung cancer, and this 'matter is urgent because [plaintiff] is unlikely to live either to testify at or to assist in the trial of his claim if the matter i[s] further delayed'"); *see also Rosenfeld v. Hartford Fire Ins. Co.*, No. 88 CIV. 2153 (MJL), 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988) ("While [plaintiffs] may suffer some initial delay, once the cases are coordinated and the defendants are able to respond to all the complaints in a coordinated manner, more time may well be saved than was lost.")

The stay requested here would not unduly prejudice the Connecticut Plaintiffs. The stay is brief – Defendants request a stay only until the JPML decides whether this action should be transferred. The Defendants currently expect their motion to be heard when the JPML next sits in May 2009 and anticipate that a ruling will be issued shortly thereafter. (Nolan Decl. ¶ 14.) Moreover, any "time lost" resolving the Defendants' motion to transfer would be easily recaptured if this case were consolidated with the pending actions in the Southern District of New York.

1   Not only is the SDNY already familiar with the facts and legal issues

2   presented by this case because litigation is already pending there, it is situated over

3   two-thousand miles *closer* to where *all* parties reside and where the Connecticut

4   Plaintiffs' lead counsel is located.  (*See supra* at 1.)  As such, the Connecticut

5   Plaintiffs cannot claim prejudice (neither as a matter of fact nor as a matter of law)

6   based on this Court's refusal to defer to their choice to bring this nationwide

7   securities class action in California's courts.

8       **B.    Defendants Will Suffer Undue Prejudice Absent The Temporary
9               Stay.**

10   If forced to litigate in this Court during the pendency of their transfer motion

11   to the JPML, Defendants would be required to expend time and resources addressing

12   substantially similar claims in multiple fora, with the potential for inconsistent

13   results.  Such an unnecessary burden on a defendant is widely regarded as prejudice

14   sufficient to justify an immediate stay.  *See, e.g.*, *In re Vioxx*, 2005 U.S. Dist. LEXIS

15   40743, at **4-7 (noting, in granting a stay, the prejudice to defendants due to the

16   potential for duplicative motion practice and discovery as well as the danger of

17   inconsistent rulings).[15]

18   The threat of duplicative efforts and inconsistent rulings is especially acute in

19   this case.  Not only are the MDL Actions pending in the SDNY before Judge Rakoff,

20   but two additional and related actions, *MissPERS* and *Iron Workers*, are also pending

21   in the SDNY and were recently transferred to Judge Rakoff for coordination and

22   consolidation.  (Exs. 4-5.)  Both *Iron Workers* and *MissPERS*, just as the case before

23   

---

24   [15]   *Accord Aikins v. Microsoft Corp.*, Civil Action No. 00-0242, 2000 U.S. Dist.
     LEXIS 4371, at *5 (E.D. La. Mar. 23, 2000) (holding that a stay pending the JPML's
25   decision was warranted because defendant "would suffer a considerable hardship and
     inequity if forced to simultaneously litigate multiple suits in multiple courts" as well
26   as "potentially suffer conflicting rulings by different judges"); *Hertz Corp. v. Gator
     Corp.*, 250 F. Supp. 2d 421, 427 (D.N.J. 2003) ("The Court recognizes the heavy
27   financial burden on [defendant] borne by having to defend . . . in multiple fora.  That
     burden is a clear hardship weighing in favor of staying this action until the MDL
28   Panel renders its decision.").

1  the Court here, are putative class actions alleging violations of the same provisions

2  of the Securities Act of 1933 arising from alleged false and misleading statements

3  made in connection with mortgage-backed securities.  (Nolan Decl. ¶¶ 4-7.)  In the

4  case of *MissPERS*, that action and this action are also based on myriad overlapping

5  securities offerings.  (*Id*. at 5.)  Given the overlap between this action and those

6  already pending in the SDNY, the risk of duplicative work and inconsistent results is

7  plain.

8        **C.**    **The Requested Stay Will Conserve Substantial Judicial Resources.**

9        A stay pending the JPML's decision to transfer also promotes the aim of

10  conserving judicial resources.  *See In re Vioxx*, 2005 U.S. Dist. LEXIS 40743, at *5

11  ("[B]y staying the proceedings until the transfer, the Court will save the time and

12  energy it otherwise would have spent familiarizing itself with the intricacies of these

13  actions."); *Hertz Corp.,* 250 F. Supp. 2d at 428 ("To decide Hertz's motion before

14  the MDL Panel decision, the Court would have to invest . . . time and resources . . .

15  and develop a better understanding of the facts than the parties have presented thus

16  far.  Given the short time until the MDL Panel will consider the motion, this Court's

17  immediate and substantial investment of time is a waste of judicial resources.").

18        Consistent with these authorities, a stay would relieve this Court of the burden

19  of addressing the issues presented by this case.  As the Connecticut Plaintiffs have

20  already conceded, this putative nationwide class action is "complex," raising

21  "difficult" and "novel issues that will be time-consuming to resolve."  (Ex. 12.)

22  Before unnecessarily delving into the complex factual and legal issues presented by

23  this action, Defendants request that this Court await a ruling by the JPML on

24  Defendants' motion to transfer.

25        **D.**    **The Requested Stay Should Be Granted Prior To Any**

26               **Consideration Of The Connecticut Plaintiffs' Motion To Remand.**

27        Courts readily grant stays pending the JPML's resolution of a motion to

28  transfer, even where the plaintiff has moved to remand the action to state court.  *See*

21

1  *e.g., In re Vioxx*, 2005 U.S. Dist. LEXIS 40743, at *4 (granting stay until the JPML's

2  resolution of the transfer motion, despite pending motion to remand, and holding that

3  "'pending motions to remand must be deferred to the transferee court for ruling after

4  transfer'") (citation omitted); *Purcell v. Merck & Co.*, No. 05cv04420L (BLM), 2005

5  U.S. Dist. LEXIS 41239, at *7 (S.D. Cal. June 3, 2005) (granting stay, despite

6  pending remand motion, and observing that "[t]he pendency of a remand motion

7  does not bar inclusion in an MDL proceeding, as the transferee court can decide the

8  motion"); *see also Turner v. Bausch & Lomb Inc.*, No. 8:06-cv-1088-T-24MSS,

9  2006 U.S. Dist. LEXIS 48546, at *2 (M.D. Fla. July 17, 2006) ("The 'general rule is

10  for federal courts to defer ruling on pending motions to remand in MDL litigation

11  until after the [JPML] has transferred the case to the MDL Panel.'") (citation

12  omitted).[16]

13       In considering such stay motions, plaintiffs' relative likelihood of success on

14  the motion to remand in the transferor court is of no moment.  *See id.*; *see also In re*

15  *Air Crash Disaster at Paris, France, on March 3, 1974*, 386 F. Supp. 1404, 1405

16  (J.P.M.L. 1975) ("The prospect of an unfavorable ruling by the transferee court . . . is

17  not a factor considered by the Panel in determining whether transfer under Section

18  1407 is appropriate."); *Clayton v. Warlick*, 232 F.2d 699, 706 (4th Cir. 1956) ("We

19  are not impressed by the argument that such transfer should be denied because of an

20  alleged conflict between this Circuit and the Seventh on an important question of law

21

22  _____
[16]     *Accord  Colf v. Regeneration Techs., Inc.*, No. 06-CV-6604L, 2007 U.S. Dist.

23  LEXIS 2095, at *2 (W.D.N.Y. Jan. 11, 2007) (granting stay, despite pending motion
to remand, and holding that "plaintiffs' pending motion to remand this case to state

24  court does not act as a bar to transfer"); *Foti v. Warner-Lambert*, No. 05-3665, 2005
U.S. Dist. LEXIS 17737, at *2 (E.D. La. Aug. 16, 2005) (staying action, despite

25  pending remand motion, and noting that "[i]t is the practice of this Court in complex
litigation of this nature to enter a stay based upon the interest of judicial economy");

26  *Dowler v. Medicine Shoppe*, No. 2:07-cv-848, 2007 U.S. Dist. LEXIS 73950, at **4-
6 (S.D. Ohio Oct. 3, 2007) (staying action, despite pending remand motion, because

27  "the interests in judicial economy and consistent pretrial rulings outweigh all other
interests and justify issuing a stay"); *Republic of Venezuela*, 1999 U.S. Dist. LEXIS

28  22742, at *6 (granting stay pending JPML's decision on request for MDL transfer,
despite plaintiff's pending motion to remand to state court).

1   involved in the case.  If there be such conflict, this presents a matter for

2   consideration by the Supreme Court on application for certiorari, not for

3   consideration by a district judge. . . .").  Indeed, any other result would have the

4   untoward effect of rewarding plaintiffs for forum shopping and would convert this

5   state into a depository for nationwide class actions based on alleged violations of the

6   Securities Act of 1933, even where such actions have little or no connection to the

7   State of California.

8          It is particularly appropriate, under the circumstances present in this case, to

9   issue a stay prior to this Court's decision on the Connecticut Plaintiffs' motion to

10  remand.  As set forth in the Merrill Defendants' Notice of Removal, the Connecticut

11  Plaintiffs' lone basis for proceeding in California is founded on the Ninth Circuit's

12  decision in *Luther* (Compl. ¶ 15), which is now subject to a circuit split and has been

13  publicly questioned by Judge Pfaelzer, the author of the district court opinion

14  affirmed by the Ninth Circuit.  (*See* Ex. 13; *see also* Merrill Defendants' Notice of

15  Removal.)  As a result of the circuit split, absent an immediate stay, there is a

16  substantial risk of inconsistent rulings on the issue of the removability of actions

17  brought against Merrill based on purported violations of the Securities Act.

18         This is especially the case here because plaintiffs may continue to file

19  additional lawsuits alleging violations of the 1933 Act – one was filed as recently as

20  February 17, 2009 – making the potential for inconsistent results quite real.  In

21  addition, at least one plaintiff previously filed an action under the 1933 Act in New

22  York state court, which the Defendants removed to federal court (albeit on different

23  grounds) to become part of the consolidated and coordinated action currently

24  pending in the Southern District of New York.  (*See* Ex. 10 (Complaint in *Louisiana*

25  *Sheriffs' Pension and Relief Fund v. Merrill Lynch & Co., Inc.*, 08-cv-9063-JSR-

26  DFE (N.Y. Sup. Ct. Oct. 3, 2008).)  Thus, to guard against the risk of inconsistent

27  results, the Court should stay this action to allow the JPML to issue a decision on

28  transfer.

1

## CONCLUSION

2      For the foregoing reasons, Defendants respectfully request an order

3  (1) transferring this action to the SDNY pursuant to 28 U.S.C. § 1404(a); or, in the

4  alternative, (2) staying this action pending a decision by the JMPL on the

5  Defendants' March 5, 2009 motion to transfer this case to the SDNY pursuant to 28

6  U.S.C. § 1407.

7                              SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM LLP
8

9                              By:  s/Thomas J. Nolan
   DATED:  March 16, 2009           Thomas J. Nolan
10                                  Eric S. Waxman
                                    Peter B. Morrison
11                                  SKADDEN, ARPS, SLATE,
                                      MEAGHER & FLOM LLP
12                                  300 South Grand Avenue
                                    Los Angeles, California 90071-3144
13                                  (213) 687-5000
                                    (213) 687-5600 (fax)
14

15                             *Attorneys for Specially Appearing Defendants*
                               Merrill Lynch & Co., Inc.; Merrill Lynch
16                             Mortgage Investors, Inc.; Merrill Lynch, Pierce,
                               Fenner & Smith Incorporated; Merrill Lynch
17                             Mortgage Lending, Inc.; Merrill Lynch Credit
18                             Corporation; Matthew Whalen; Brian T. Sullivan;
                               Michael M. McGovern; Donald C. Han; and Paul
19                             Park

20

21

22

23

24

25

26

27

28

SPECIALLY APPEARING DEFENDANTS' MOTION FOR TRANSFER OR, IN THE ALTERNATIVE, FOR A STAY